[No. 15045. Department One. November 22, 1918.]

THE STATE OF WASHINGTON, *on the Relation of King County, Plaintiff,* v. THE SUPERIOR COURT FOR PIERCE COUNTY, *W. O. Chapman, Judge, Respondent.*[1]

COUNTIES (93)—ACTIONS—CAPACITY TO BE SUED—VENUE—STATUTES. The effect of Rem. Code, § 951, giving a right of action against a county for injury by some act or omission of the county where none existed at common law, is to make the county answerable under the general rules of procedure in the superior courts, and liable thereunder to suits in other counties where the venue is local.

STATUTES (54)—CONSTRUCTION—REMEDIAL ACT. Statutes providing remedies are to be liberally construed.

COMMON LAW (4)—OPERATION AND EFFECT—VENUE. Common law rules of procedure having been abolished by Rem. Code, § 153, our common law, preserved only when not inconsistent with the laws of the state by Id., § 143, is a rule of decision and not a rule of practice, and common law rules of practice as to venue cannot be allowed to defeat a right of action.

VENUE (3)—NATURE AND SUBJECT OF ACTION—INJURY TO REAL PROPERTY—ACTION AGAINST COUNTY. Rem. Code, § 204, providing that actions for the recovery of injuries to real property shall be brought in the county where the subject of the action is situated is general, applying to actions against counties; hence such an action against two counties is local and properly brought in the county where the land was situated, notwithstanding that neither the common law, nor any express statute, authorized an action against a county beyond its limits.

Application filed in the supreme court October 2, 1918, for a writ of prohibition to the superior court for Pierce county, Chapman, J., to prohibit further proceedings in a cause. Denied.

*Alfred H. Lundin* and *Frank P. Helsell,* for relator.
*Davis & Neal,* for respondent.

[1]Reported in 176 Pac. 352.

CHADWICK, J.—Pursuant to chapter 54, Laws of 1913, p. 156, the counties of King and Pierce undertook the improvement of the White, Stuck and Puyallup rivers by straightening, widening, and deepening the banks and channels, to the end that recurrent damage by winter floods might be avoided in the future. The Tacoma Meat Company, of which Henry Conger is receiver, is the owner of certain lands abutting the Puyallup river in Pierce county. The receiver brought an action in Pierce county against the counties of Pierce and King to recover damages alleged to have been suffered by the wrongful, careless and negligent deflection of the stream against the banks and shores bounding the property of the meat company.

The matter coming on to be heard upon a motion for a change of venue, the trial judge overruled the motion, whereupon counsel appearing in behalf of King county came to this court challenging the jurisdiction of the superior court and asking that a writ of prohibition issue restraining further proceedings. We granted an order to show cause why a writ should not issue, which, being met by demurrer and answer, raises the one and controlling question, *i. e.*, Can a municipal corporation be sued in any court other than a court situate within its own boundaries?

Petitioner argues, and upon well established authority, too, that, it being the rule at common law that a county could be sued only in an intraterritorial court, and there being no statute which in its terms either negatives or abolishes the common law rule, it follows that the court below is threatening to exceed its jurisdiction by holding King county to answer in the superior court for Pierce county. Counsel cite: *North Yakima v. Superior Court*, 4 Wash. 655, 30 Pac.

1053; *Piercy v. Johnson City,* 130 Tenn. 231, 169 S. W.
765, L. R. A. 1915 F 1029; *Heckscher v. Philadelphia,*
6 Sad. (Pa. Sup. Ct. Cas.) 346, 9 Atl. 281; *Parks Co.
v. Decatur,* 138 Fed. 550; *Cullman County v. Blount
County,* 160 Ala. 319, 49 South. 315; *Phillips v. Balti-
more,* 110 Md. 431, 72 Atl. 902, 25 L. R. A. (N. S.) 711;
*Shaver v. Lawrence County,* 44 Ark. 225; *Lehigh
County v. Kleckner,* 5 Watts. & Serg. (Pa.) 181; *City
Nat. Bank of Austin v. Presidio County,* 26 S. W. (Tex.
Civ. App.) 775.

Counsel appeal strongly to the public policy which
is made the groundstone of the common law rule—that
is, that the duties of municipal officers being essen-
tially local, they should not be put to the compulsion
of attending upon trials distant from the seat of that
government which they are under obligation to ad-
minister. It will be observed by those who have cause
or sufficient interest to read the authorities cited that
they naturally fall within two classes: (a) There was
no statute fixing the venue of civil actions; or (b) the
action was for an injury to person or personal prop-
erty, and consequently personal, a situation analogous
to our statutory provision permitting a defendant to
compel the trial of a cause otherwise transitory in the
county of his residence.

We feel called upon, therefore, to make reference
only to *North Yakima v. Superior Court,* and this not
without some embarrassment. The writer of the opin-
ion, which was concurred in by two members of the
court, two concurring in the result, after holding
under the statute that the action had been brought
in the wrong county, proceeds to discuss generally
the common law rule of venue in actions against mu-
nicipal corporations, and probably holds in line with
the cases cited in the opinion, namely, that municipal

corporations "could only be sued outside of the county wherein they were situated by express legislative provision;" or, as he puts it,

"In other words it held that the general provisions authorizing such corporations to be sued do not change the rule which is found to exist at common law that the suits thus authorized to be brought must be waged in the county in which the corporations were situated."

It has been disputed whether an action could be maintained against a municipal corporation at common law for its torts; but however that may be, this action is maintained under a positive statute granting a right to maintain actions against municipal corporations.

"An action may be maintained against a county, or other of the public corporations mentioned or described in the preceding section, either upon a contract made by such county or other public corporation in its corporate character, and within the scope of its authority, or for an injury to the rights of the plaintiff arising from some act or omission of such county or other public corporation." Rem. Code, § 951.

The legal effect of this section has been declared to be:

"Not only is provision made for an action against the county upon contract within the scope of its authority, but an injury to the right of the plaintiff arising from some act or omission of the county." *Kirtley v. Spokane County,* 20 Wash. 111, 54 Pac. 936.

Contrary to the inferences drawn by the majority of the court in the *Yakima* case, it seems to us that the effect of this statute is not merely to give a right of action where none existed before, but to make municipal corporations subject to suit as an ordinary party litigant and, as such, answerable under the general rules governing procedure in the superior courts.

It is a rule of construction that statutes providing remedies against either public or private wrongs are to be liberally construed. 36 Cyc. 1173.

"If a new right is created by statute and it is silent as to the mode of its enforcement, or as to the form of redress in case of invasion, then the proprietor of that right may resort to the common law or the existing general statutory procedure for remedial process." Lewis' Sutherland Statutory Construction (2d ed.), 572, citing many cases.

"If Harris had possessed a right, at the common law, to the exclusive enjoyment of this ferry, then, the statute giving a remedy in the affirmative, without a negative expressed or implied, for a matter authorized by the common law, he might, notwithstanding the statute, have his remedy by action at the common law. (1 Com. Dig. Action on Statute, C.) But Harris had no exclusive right at the common law, nor any right, but what he derived from the statute. Consequently, he can have no right, since the statute, but those it gives; and his remedy, therefore, must be under the statute." Almy v. Harris, 5 Johns. 175.

In some of the cases cited by the text writer, the courts gave remedy according to the common law. But in each instance, save one, there was no code of procedure, and the courts sat in what, for the want of a better term, we call common law states. But with us, we have no common law rules of procedure. Common law rights, like statutory rights, are enforced under the code of procedure, and not under the forms of the common law.

There is a wide distinction between common law rights and common law remedies. The one is an inheritance of blood; the other is no more than a means of preservation in which no rights are vested and no preferences preserved. By the adoption of the reformed procedure, we divorced ourselves from the one

while affirming the other. In the absence of statute law, the common law as we have it is a rule of decision. It is not a rule of practice.

To the extent of bringing the petitioner into court, respondent must have resorted to the procedure outlined in the code, for we admit neither the process nor the writs of the common law. We have neither *capias* nor attachment, declaration or plea. A summons must be issued under the statute to be answered in the time limited. If a judgment is entered it is satisfied by execution and not by *scire facias*. Shall we hold, then, although petitioner must be brought into court as an ordinary litigant, for

"There shall be in this state hereafter but one form of action for the enforcement or protection of private rights and the redress of private wrongs, which shall be called a civil action." Rem. Code, § 153;

and being mindful that the common law is preserved only when not inconsistent with the laws of this state (Rem. Code, § 143), that, although the suit must be begun and prosecuted under the code, yet its venue will nevertheless be determined by reference to the common law. If we were to attempt it the common law would block our effort quite as effectually as the statutes of venue, for

"In local actions, where possession of land is to be recovered, or damages for an actual trespass, or for waste, etc., affecting land, the plaintiff must lay his declaration or declare his injury to have happened in the very county and place that it really did happen." 3 Blackstone's Commentaries, 294.

And this was the rule in England under the common law, as confirmed by acts of parliament, until the passage of the judicature act of 1873.

Having then two common law rules, the one combating the other and with equal force, there is but one

thing to do; that is, to fix the venue of this suit, as we do all others, where the statute has fixed it, for the place of trial is purely a question of procedure. It involves no question of substantive law.

Neither a person nor a body corporate has a constitutional right to be sued at the place of domicile. This counsel will admit, but they contend that the common law procedure as to the place of trial must govern in the absence of a statute expressly authorizing a county to be sued beyond its own boundaries. But to us it seems the better rule that, having no procedure other than the practice act, a municipal corporation must answer under it, unless the act giving the right of action exempts it in terms. This it does not do.

"Actions for the following causes shall be commenced in the county in which the subject of the action, or some part thereof, is situated:

"(1) For the recovery of, for the possession of, for the partition of, for the foreclosure of a mortgage on, or for the determination of all questions affecting the title or for any injuries to real property." Rem. Code, § 204.

*McBane v. People ex rel. Stout,* 50 Ill. 506, is quoted with approval in *Clarke v. Lyon County,* 8 Nev. 181:

"It will be observed that the language of this section is comprehensive, and embraces the parties to any civil suit. And it is obvious that an action against a county is a civil cause; and it is equally plain that the plaintiff and defendants are parties to it; and it follows that they are embraced within the provisions of this law, nor do we find any exceptions as to any class of persons or civil causes, and no reason is shown why such parties or causes are not as fully within the reason of the provisions of this law as other parties."

In *Mayor, etc. of Baltimore v. Meredith's Ford and Jarrettsville Turnpike Co.,* 104 Md. 351, 65 Atl. 35,

the question occurred, as is indicated by the contentions of counsel for the city:

"(1) A municipal corporation can be sued in its own courts only. (2) The Statute law of Maryland makes no provision for suits against a municipal corporation in any court other than its own. (3) There is nothing in the common law, as interpreted by the courts of Maryland, that is to be taken as a qualification of the rule that municipal corporations cannot be sued in courts, other than their own. The sole question thus presented, is whether a municipal corporation can be sued, in this form of action, in a court other than its own."

The action was one of trespass to real property, and the court held, without discussion of contrary authority, that the municipality must answer, saying:

"But it is earnestly urged upon the part of the appellant that the authorities cited and the reason for the rule stated have no application to the case at bar, because the statute law of the state makes no provision for such suits, and there is nothing in the rule of the common law, as interpreted by the courts, that can be taken as a qualification of the rule that municipal corporations cannot be sued in courts other than their own. We have been referred to no decision in this state that holds that a municipal corporation should not be bound by the rules of law which are applicable to other litigants, and no sound reason can be given why they should be excepted."

The law, being founded in reason, boasts as its first cardinal principle that, when the reason for the law ceases, the law itself ceases. *Cessante ratione legis cessat ipsa lex.* The rule of the common law was grounded in reason. It voiced a wise public policy. It fit the times; but to admit the rule as binding under present conditions is to make a fetich of authority and hold to the rule for no other reason than that it was originally so declared and is entitled to perpetual ven-

eration because it has been followed in one book after another. In these days of quick transportation, of mileage books, and office automobiles, it is putting no hardship on the officers of a municipality, or upon the municipality itself, to defend an action which by all other law is made local and ought by right to be determined at the place where the cause arises. To hold otherwise is to find a common law rule and administer it in obstinacy rather than in reason.

The action is local, and the county of King is therefore liable to answer in the county where the injury occurred.

The writ is denied.

FULLERTON, PARKER, MACKINTOSH, and TOLMAN, JJ., concur.