**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MOHAMMED AL-SAFIN,
          *Plaintiff-Appellee,*

          v.

CIRCUIT CITY STORES, INC., a
Virginia corporation,
          *Defendant-Appellant.*

No. 03-35297

D.C. No.
CV 99-1953 MJP

OPINION

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted
May 5, 2004—Seattle, Washington

Filed January 14, 2005

Before: A. Wallace Tashima, Richard A. Paez, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Tashima;
Dissent by Judge Bea

**COUNSEL**

Red Darrell Berry, Livingston & Mattesich, Sacramento, California, for the defendant-appellant.

Michael C. Subit, Frank Freed Subit & Thomas, LLP, Seattle, Washington, for the plaintiff-appellee.

## OPINION

TASHIMA, Circuit Judge:

Circuit City Stores, Inc. ("Circuit City"), appeals the district court's denial of its motion to dismiss and compel arbitration of Mohammed Al-Safin's employment discrimination claims. The district court held that the arbitration agreement between Circuit City and Al-Safin is unconscionable under Washington state law, and thus unenforceable. We have jurisdiction pursuant to 9 U.S.C. § 16(a)(1)(B), *see Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 780 (9th Cir. 2002), and we affirm.

## BACKGROUND

In June 1997, Al-Safin applied for a job at a Circuit City store in the state of Washington. Before Circuit City would consider his application, Al-Safin was required to sign an arbitration agreement entitled "Circuit City Dispute Resolution Agreement" ("DRA"). By signing the DRA, Al-Safin agreed to resolve all disputes arising out of his employment relationship with Circuit City through arbitration in accordance with the "Circuit City Dispute Resolution Rules and Procedures" ("DRRP").

Rule 19 of the DRRP in effect in 1997 (the "1997 DRRP") stated that both the DRA and the DRRP could be amended "on December 31st of any year upon giving 30 calendar days written notice to Associates, provided that all claims arising before alteration or termination shall be subject to the [DRA] and corresponding [DRRP] *in effect at the time the claim arose*."[1] (Emphasis added.)

---

[1]"Circuit City refers to all job applicants and to current and former employees as 'Associates.' " *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1169 n.1 (9th Cir. 2003).

While Al-Safin was still employed by Circuit City, the DRRP was amended, effective December 31, 1997 (the "1998 DRRP"). The 1998 DRRP was essentially the same as the 1997 DRRP, except that Rule 19 was amended to state that "all claims arising before alteration or termination shall be subject to the [DRA] and corresponding [DRRP] *in effect at the time the Arbitration Request Form and accompanying filing fee is received by the Company*." (Emphasis added.) The result of this modification would be that any arbitration filed in 2003 would be governed by the DRRP in effect in 2003, as opposed to the DRRP in effect when the claim arose.

Al-Safin continued to work for Circuit City after the 1998 modification until his employment was terminated in November 1998.

On December 2, 1999, Al-Safin filed a complaint against Circuit City in the United States District Court for the Western District of Washington alleging violations of both federal and state anti-discrimination laws. Circuit City filed a motion to compel arbitration, which was denied, and Circuit City appealed.

In an unpublished disposition, we reversed the district court's decision and held that: (1) the district court improperly relied on *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182 (9th Cir. 1998), "to hold that the compulsory arbitration contract was unenforceable;" (2) "to the extent that the district court relied on the 'knowing waiver' requirement of *Prudential Ins. Co. v. Lai*, 42 F.3d 1299 (9th Cir. 1994), our examination of the relevant contract reveals that the requirement was met as a matter of law;" and (3) "although we express no opinion as to the enforceability of particular provisions, we are unable to agree with the suggestion that illegal provisions so infected the contract as to render it invalid as a matter of *federal law*." *Al-Safin v. Circuit City Stores, Inc.*, 46 Fed. Appx. 446 (9th Cir. 2002) (emphasis added) ("*Al-Safin I*"). We explicitly remanded the case for the district court to con-

sider "the validity of these contracts under state law." *Id.* at 447.

Effective December 31, 2002, long after Al-Safin was terminated by Circuit City, and over three years into this litigation, the DRRP was again amended (the "2003 DRRP"). The 2003 DRRP modified many of the provisions that have been deemed unconscionable or unenforceable in other proceedings. *See Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101 (9th Cir. 2003); *Ingle*, 328 F.3d 1165; *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889 (9th Cir.), *cert. denied*, 535 U.S. 1112 (2002); *Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677 (8th Cir. 2001); *see also Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003) (expressing "serious doubts about the fairness and reasonableness" of the DRRP's terms "concerning remedies, the payment of arbitration fees, discovery, and the limitations period for requesting arbitration").

One week after adopting the 2003 DRRP, Circuit City renewed its motion to compel arbitration and argued that under the new DRRP the arbitration agreement is enforceable. The district court held that the 1997 DRRP, and not the 1998 or 2003 DRRP, applies, and that the arbitration agreement is unenforceable because it is unconscionable under Washington law. After its motion for reconsideration was denied, Circuit City appealed.

## STANDARD OF REVIEW

The district court's denial of a motion to compel arbitration is reviewed *de novo. Ingle*, 328 F.3d at 1169.

## DISCUSSION

[1] The Federal Arbitration Act ("FAA") was enacted "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane*

*Corp.*, 500 U.S. 20, 24 (1991). The FAA applies to arbitration agreements, like the one here, that cover employment-related claims. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001). The FAA provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable," but courts may decline to enforce them when grounds "exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

Accordingly, we review Al-Safin's arbitration agreement with Circuit City in light of the "liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), and consider its enforceability according to the laws of the state of contract formation, *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Ingle*, 328 F.3d at 1170.

The parties dispute whether: (1) we previously decided that the arbitration agreement is enforceable; (2) the agreement is unconscionable under Washington law; and (3) any unenforceable contract provisions are severable.[2]

## I.  Law of the Case

Circuit City contends that our prior decision instructed the district court to determine if any particular contract terms are unenforceable under Washington law, while enforcing the core contractual obligation to arbitrate. *See Al-Safin I*, 46 Fed. Appx. 446. We disagree.

---

[2]Our decision in *EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742 (9th Cir. 2003) (en banc) forecloses Al-Safin's arguments that *Duffield* prohibits enforcement of the arbitration agreement. *See id.* at 745 (overruling *Duffield*).

"The law of the case doctrine requires a district court to follow the appellate court's resolution of an issue of law in all subsequent proceedings in the same case." *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1186 (9th Cir. 2001). The doctrine applies to both the appellate court's "explicit decisions as well as those issues decided by necessary implication." *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995) (quoting *Eichman v. Fotomat Corp.*, 880 F.2d 149, 157 (9th Cir. 1989)). However, "[t]he doctrine does not apply to issues not addressed by the appellate court." *Lujan*, 243 F.3d at 1186.

Our prior disposition consists of two paragraphs. The first addresses the validity of the arbitration agreement under federal law. By citing *Duffield*, 144 F.3d 1182, and *Prudential Ins. Co. v. Lai*, 42 F.3d 1299, we determined that Circuit City could compel arbitration of Al-Safin's federal employment discrimination claims, and that Al-Safin knowingly agreed to arbitrate his federal claims. *Al-Safin I*, 46 Fed. Appx. at 446. Although we expressed "no opinion as to the enforceability of particular provisions," we concluded that we were "unable to agree with the suggestion that illegal provisions so infected the contract as to render it invalid *as a matter of federal law*." *Id.* (emphasis added).

The second paragraph discusses what we did not decide. We began with the general proposition that to be enforceable, an arbitration contract "must meet the requirements of generally applicable state [contract] law." *Id.* We then remanded the case for the district court to determine the "validity of [the agreement] under [Washington] state law." *Id.* at 446-47.

**[2]** The plain meaning of our decision is that: (1) the arbitration agreement is valid under federal law; but (2) the district court was to determine in the first instance whether it is valid under state contract law. We did not address whether the arbitration agreement is enforceable under state law and the

district court followed our mandate by determining unconscionability under Washington law.

## II.   Washington Law of Unconscionability

**[3]** "Unconscionability is a doctrine under which courts may deny enforcement of all or part of an unfair or oppressive contract based on abuses during the process of forming a contract or within the actual terms of the contract itself." David K. DeWolf, et al., 25 Wash. Practice Series, *Contract Law & Practice* § 9.5 (2003). Washington recognizes two classifications of unconscionability, substantive and procedural. *See Zuver v. Airtouch Communications, Inc.*, 2004 WL 3016484, at *3 (Wash. Dec. 23, 2004) (citing *Nelson v. McGoldrick*, 896 P.2d 1258, 1262 (Wash. 1995), and *Schroeder v. Fageol Motors, Inc.*, 544 P.2d 20, 23 (Wash. 1975)).

> "Substantive unconscionablity involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh. . . ." " 'Shocking to the conscience', 'monstrously harsh', and 'exceedingly calloused' are terms sometimes used to define substantive unconscionability." Procedural unconscionability is the "lack of a meaningful choice, considering all the circumstances surrounding the transaction including " '[t]he manner in which the contract was entered," whether the party had "a reasonable opportunity to understand the terms of the contract," and whether "the important terms [were] hidden in a maze of fine print.' "

*Zuver* 2004 WL 3016484, at *3 (quoting *Schroeder*, 544 P.2d at 23, and *Nelson*, 896 P.2d at 1262) (emendations in the original). *See also Adler v. Fred Lind Manor*, 2004 WL 3016302, at *4 (Wash. Dec. 23, 2004).

**[4]** In Washington, a contract generally may be invalid based on either substantive or procedural unconscionability.

*See M.A. Mortenson Co. v. Timberline Software Corp.*, 998 P.2d 305, 314-16 (Wash. 2000) (en banc); *Tjart v. Smith Barney, Inc.*, 28 P.3d 823, 830 (Wash. Ct. App. 2001) (recognizing that a contract may be unenforceable based on procedural unconscionability only); *see also Zuver*, 2004 WL 3016484, at *3 n.4. In the employment context, the Washington Supreme Court, while "hold[ing] that substantive unconscionability alone can support a finding of unconscionability," has recently "decline[d] to consider whether [procedural unconscionability] alone will support a claim of unconscionability." *Adler*, 2004 WL 3016302, at *5.

### III.   Substantive Unconscionability

Whether a contract is substantively unconscionable is a question of law determined as of the time the contract was made, as opposed to the time when the contract is enforced. *Schroeder*, 544 P.2d at 24.

### A.   Which DRRP Controls

As a threshold issue, Circuit City contends that Rule 19 of the DRRPs permitted it to amend the arbitration agreement each year, and that under the 1998 DRRP, Al-Safin's dispute is governed by the rules in effect when he files for arbitration. Because Al-Safin has not yet filed for arbitration, Circuit City contends that his dispute is governed by the most recent rules and procedures and that we should analyze the 2003 DRRP to determine whether the agreement is enforceable.

We are not persuaded. Even if we assume that Circuit City validly amended the 1997 DRRP and is seeking to enforce Rule 19 of the 1998 DRRP, we could not conclude that the 2003 DRRP applies to Al-Safin.[3]

---

[3]Al-Safin does not dispute that Circuit City effectively implemented the 1998 DRRP. Therefore, we assume that the 1997 DRRP was properly amended and that Circuit City can enforce the 1998 DRRP.

**[5]** First, we have held that the modification provision of Rule 19 of the 1998 DRRP is unenforceable under California law. *See Mantor*, 335 F.3d at 1107; *Ingle*, 328 F.3d at 1179. The modification provision allows Circuit City to alter the rules and procedures governing arbitration almost at will. For example, here, Circuit City has attempted to implement new rules and procedures over three years after the onset of this litigation, and over four years after terminating Al-Safin's employment. We conclude that Rule 19, which permits this conduct, is substantively unconscionable under Washington law and that the modification provision is therefore unenforceable.

Second, even if we were to accept that the 1998 DRRP requires us to look at the DRRP in effect when Al-Safin files for arbitration, we would conclude that the 2003 DRRP is not effective as to Al-Safin.

**[6]** Under Washington law, contract modifications are subject to the general "requisites of contract formation, offer, acceptance and consideration." *Thompson v. St. Regis Paper Co.*, 685 P.2d 1081, 1087 (Wash. 1984). Employers in Washington have been permitted to "unilaterally amend or revoke policies and procedures established in an employee handbook." *Gaglidari v. Denny's Rests., Inc.*, 815 P.2d 1362, 1367 (Wash. 1991) (en banc).

> [T]he handbook language constitutes the offer; the offer is communicated by the dissemination of the handbook to the employee; the employee's retention of employment constitutes acceptance; and by continuing to stay on the job, although free to leave, the employee supplies the necessary consideration.

*Id.* (citing *Pine River State Bank v. Mettille*, 333 N.W.2d 622 (Minn. 1983)). "However, an employer's unilateral change in policy will not be effective until employees receive reasonable notice of the change" and accept the change. *Id.*

**[7]** Applying the principles set forth in *Gaglidari*, we conclude that Circuit City did not properly amend the 1998 DRRP, at least as to Al-Safin. Circuit City's offer to amend the 1998 DRRP consisted of posting a written notice at Circuit City locations and by including a copy of the modification in its Applicant Packet. Even if this provided "reasonable notice" to current and prospective employees, it was not "reasonable notice" to former employees like Al-Safin. That is, it is not reasonable to expect former employees of Circuit City to check the postings at a Circuit City store every December, nor is it reasonable to expect that a terminated employee would review an Applicant Packet, to determine if Circuit City decided to amend its arbitration rules and procedures. Thus, as to former employees like Al-Safin, there was no valid offer to amend the 1998 DRRP. Moreover, Al-Safin did not continue his employment with Circuit City, sign an acceptance, or accept the modification of the 1998 DRRP in any other way.[4]

**[8]** Therefore, because no contract was formed between Circuit City and Al-Safin regarding the 2003 DRRP, the 2003 DRRP never went into effect as to Al-Safin and the 1998 DRRP controls the parties' dispute.[5]

---

[4]The dissent asserts that "[n]othing in *Gagliardi* varied the well-settled common-law principles of at-will employment: the terms of employment and of its termination are set by the employer." Dissent, slip op. at 671. That assertion, however, does not address what happened in this case. Here, Circuit City attempted to change "the terms of employment and of its termination" *after* Al-Safin's employment had been terminated.

[5]Circuit City has not cited any case, and our research has revealed none, where a party was permitted unilaterally to amend a contract midway through litigation concerning that contract. Rather, courts addressing whether an arbitration agreement can be amended after it has been challenged during litigation have declined to permit the amendment. *See e.g.*, *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 697 (Cal. 2000) ("No existing rule of contract law permits a party to resuscitate a legally defective contract merely by offering to change it.").

## B.   Substantive Unconscionability of the 1998 DRRP

**[9]** In *Mantor, Ingle,* and *Adams*, we held that Circuit City's arbitration agreement is substantively unconscionable under California law and rejected contract provisions: (1) forcing employees to arbitrate claims against Circuit City, but not requiring Circuit City to arbitrate claims against employees, *Ingle*, 328 F.3d at 1173; *Adams*, 279 F.3d at 893-94; (2) limiting remedies, *Ingle*, 328 F.3d at 1178-79; *Adams*, 279 F.3d at 894; (3) splitting costs and fees, *Mantor*, 335 F.3d at 1107; *Ingle*, 328 F.3d at 1177-78; *Adams*, 279 F.3d at 894; (4) imposing a one-year statute of limitations, *Mantor*, 335 F.3d at 1107; *Ingle*, 328 F.3d at 1175; *Adams*, 279 F.3d at 894; (5) prohibiting class actions, *Mantor*, 335 F.3d at 1107; *Ingle*, 328 F.3d at 1175-76; (6) regarding the filing fee and waiver of the fee, *Mantor*, 335 F.3d at 1107-08; *Ingle*, 328 F.3d at 1177; and (7) giving Circuit City the unilateral right to terminate or modify the agreement, *Mantor*, 335 F.3d at 1107; *Ingle*, 328 F.3d at 1179.

**[10]** California applies virtually the same definition of substantive unconscionability as Washington. *Compare Ingle*, 328 F.3d at 1172 (stating that under California law, substantive unconscionability refers to whether terms of the agreement "are so one-sided as to shock the conscience" (quoting *Kinney v. United Healthcare Servs., Inc.*, 83 Cal. Rptr. 2d 348, 353 (Ct. App. 1999)) *with Nelson*, 896 P.2d at 1262 (stating that under Washington law, substantive unconscionability refers to contract terms that are "one-sided or overly harsh" and "shocking to the conscience" (quoting *Schroeder*, 544 P.2d at 23)). Each of the provisions we held unconscionable under California law is present in the 1998 DRRP at issue here. Thus, we conclude that *Mantor*, *Ingle*, and *Adams* are persuasive authority that the arbitration agreement is substantively unconscionable under Washington law. And, in fact, the Washington Supreme Court recently cited *Ingle*, 328 F.3d at 1175, and *Adams*, 279 F.3d 894-95, with approval, in holding that a 180-day limitations provision in an employment

arbitration agreement was substantively unconscionable. *See Adler*, 2004 WL 3016302, at 11 (stating that "[w]e agree with the Ninth Circuit").**⁶**

Moreover, the United States Supreme Court has explained that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Gilmer*, 500 U.S. at 26 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). *Gilmer* requires arbitration agreements to embody "basic procedural and remedial protections so that claimants can effectively pursue their statutory rights." *Adams*, 279 F.3d at 895. In *Adams*, we explained that Circuit City's arbitration agreement does not meet these minimum requirements because it limits the remedies that would otherwise be available in a judicial forum, and fails to ensure that employees do not have to pay unreasonable fees, costs, or expenses "as a condition of access to the arbitration forum." *Id.* Here, we again conclude that Circuit City's arbitration agreement requires employees to forgo essential substantive and procedural rights and that the clauses regarding coverage of claims, remedies, arbitration fees, cost-splitting, the statute of limitations, class actions, and modifications, render the arbitration agreement excessively one-sided and unconscionable.

---

**⁶**The dissent is critical of our reliance on "Ninth Circuit cases that purport to interpret California law." Dissent, slip op. at 675. In addition to the Washington Supreme Court's agreement with *Ingle* and *Adams*, as shown in the text, above, in *Zuver*, the Washington Supreme Court cited with approval *Ting v. AT&T*, 319 F.3d 1126, 1151-52 (9th Cir.) (construing California law), *cert. denied*, 540 U.S. 811 (2003), in holding a confidentiality provision substantively unconscionable, *Zuver*, 2004 WL 3016484, at *8-*10, and a California case, *Armendariz*, 6 P.3d at 694, in holding a remedies limitation provision substantively unconscionable, *Zuver*, 2004 WL 3016484, at *10-*11.

## IV. Severability

**[11]** Like California law, Washington law grants courts discretion to sever unconscionable contract provisions or refuse to enforce the entire contract. *Compare Ingle*, 328 F.3d at 1180 (explaining that under California law the court may "refuse to enforce the contract in its entirety") *with Schroeder*, 544 P.2d at 262 (stating that under Washington law "the court may refuse to enforce the contract" (quoting Wash. Rev. Code § 62A.2-302)).

**[12]** In each of the California cases — *Mantor*, *Ingle*, and *Adams* — we held that the unconscionable terms rendered the arbitration agreement unenforceable. In *Ingle*, we specifically determined that the 1998 arbitration agreement was "permeated with unconscionable provisions" and was unenforceable in its entirety because "[a]ny earnest attempt to ameliorate the unconscionable aspects of Circuit City's arbitration agreement would require this court to assume the role of contract author rather than interpreter." *Ingle*, 328 F.3d at 1180; *see also Adams*, 279 F.3d at 895-96 (reaching the same result regarding an earlier version of the arbitration agreement). Applying Washington law, we also conclude that the unconscionable provisions of the 1998 DRRP pervade the entire arbitration agreement and any attempt to sever those provisions would render the procedure unworkable.

**[13]** The recent cases of *Zuver* and *Adler* are not to the contrary. Although in those cases the Washington Supreme Court severed the unconscionable provisions and enforced the remainder of the arbitration agreements, that was because only two discrete provisions of the respective agreements were held to be unconscionable. *See Zuver*, 2004 WL 3016484, at *11 ("We can easily excise the confidentiality and remedies provisions but enforce the remainder.); *Adler*, 2004 WL 3016302, at *12 ("In this case, however, [the] arbitration agreement contains just two substantively unconscionable provisions."). The Washington Supreme Court,

however, "acknowledge[d] that in instances where an employer engages in an 'insidious pattern' of seeking to tip the scales in its favor in employment dispites by inserting numerous unconscionable provisions in an arbitration agreement, courts may decline to sever the unconscionable provisions." *Id.* (citing *Ingle*, 328 F.3d at 1180).[7] Because this agreement is "permeated with unconscionable provisions," *Ingle*, 328 F.3d at 1180, we hold that the entire arbitration agreement is unenforceable.

## CONCLUSION

For the foregoing reasons, we conclude that the arbitration agreement between Circuit City and Al-Safin is substantively unconscionable. Although we have serious doubts about whether the agreement is procedurally unconscionable as well, we do not decide this issue because the agreement's substantive unconscionability alone renders it invalid under Washington law. *See Adler*, 2004 WL 3016302, at *5. Therefore, the judgement of the district court is

**AFFIRMED.**

---

BEA, Circuit Judge, dissenting:

Circuit City Stores, Inc. ("Circuit City") appeals the district court's denial of its motion to dismiss and compel arbitration of Mohammed Al-Safin's employment discrimination claims. The majority opinion affirms, holding that certain provisions of Circuit City's Dispute Resolution Rules and Procedures ("DRRP") in effect in 1998 are substantively unconscionable

---

[7]The Washington Supreme Court's recent decisions in *Zuver* and *Adler* have erased any "doubt about the relevance of *Ingle* and *Mantor*," dissent, slip op. at 677, so that, if it ever was warranted, certifying the question to the Washington Supreme Court is no longer warranted.

under Washington law and that these unconscionable provisions pervade the entire arbitration agreement such that any attempt to sever those provisions would render the resulting procedure unworkable. Slip op. at 662-65.

I believe that the majority opinion errs in its initial premise — that is, that it is the DRRP in effect in 1998 that are at issue. Rather, I believe that the modification provision in Rule 19 of the DRRP in effect in 1998 is enforceable under Washington law (or, at the very least, that there is sufficient doubt as to certify that question to the Washington Supreme Court) and, thus, that it is the DRRP in effect at the time Al-Safin ultimately files his Arbitration Request Form and accompanying filing fee that govern the arbitration here. Further, the DRRP in effect in 2003 are not substantively unconscionable under Washington law. Accordingly, I would reverse (or, at the very least, certify the relevant questions to the Washington Supreme Court) and, thus, respectfully dissent.

I.

As the majority opinion sets forth, Al-Safin applied for a job at Circuit City in June 1997. Before he submitted his application, he signed an arbitration agreement that bound Al-Safin to resolve all disputes arising out of his employment relationship with Circuit City in accordance with the DRRP. Rule 19 of the DRRP in effect at the time Al-Safin applied for his job stated:

> Circuit City may alter or terminate the Agreement and these Dispute Resolution Rules and Procedures on December 31st of any year upon giving 30 calendar days written notice to Associates, provided that all claims arising before alteration or termination shall be subject to the Agreement and corresponding Dispute Resolution Rules and Procedures *in effect at the time the claim arose*. An associate shall be deemed to have accepted a modification or termina-

tion of the Dispute Resolution Agreement or the Rules and Procedures by accepting or *continuing* employment with Circuit City after receiving notice of such modification or termination.

(Emphasis added).

At year end 1997, Circuit City amended Rule 19.[1] Al-Safin continued working at Circuit City until his employment was terminated in November 1998. There is no issue raised by Al-Safin that he did not receive reasonable notice of the December 31, 1997 change to Rule 19. Indeed, as the majority opinion correctly notes, "Al-Safin does not dispute that Circuit City effectively implemented the 1998 DRRP." Slip op. at 659 n.3.

The December 31, 1997 amendment to Rule 19 — and, thus, Rule 19 of the DRRP in effect in 1998 — provided in relevant part:

Circuit City may alter or terminate the Agreement and these Dispute Resolution Rules and Procedures on December 31st of any year upon giving 30 calendar days written notice to Associates, provided that all claims arising before alteration or termination shall be subject to the Agreement and corresponding Dispute Resolution Rules and Procedures *in effect at the time the Arbitration Request Form and accompanying filing fee is received by the Company*.

(Emphasis added). As the majority opinion correctly concludes, "[t]he result of this modification would be that any arbitration filed in 2003 would be governed by the DRRP in

---

[1]Although the DRRP in effect in 1998 are dated as of January 1998, the DRRP in effect in 1997 permitted Circuit City to alter or terminate the DRRP only on December 31 of any year. Thus, the DRRP in effect in 1998 must have resulted from amendments on December 31, 1997.

effect in 2003, as opposed to the DRRP in effect when the claim arose." Slip op. at 654.

The threshold and determinative question, then, is whether the DRRP in effect in 1998, when Al-Safin's employment was terminated and his employment discrimination claim arose, govern the arbitration, rather than the DRRP in effect at the time Al-Safin ultimately files with Circuit City the Arbitration Request Form and accompanying fee. The plain meaning of the modification provision in Rule 19 of the DRRP in effect at the time Al-Safin's employment was terminated in 1998 admits of no doubt: If he sought arbitration and paid the arbitration fee immediately upon termination or at any time before December 31, 1998, his arbitration would be governed by the DRRP in effect in 1998. If he tarried, he ran the risk that newer arbitration rules would be adopted which would be less beneficial to him. On the other hand, delay could bring rules that would comparatively benefit him, which, in the event, is what happened.

Nevertheless, the majority opinion concludes that the DRRP in effect in 1998 are applicable for two reasons. *First*, according to the majority opinion, " 'an employer's unilateral change in policy will not be effective [under Washington law] until employees receive reasonable notice of the change' and accept the change" and that Circuit City did not provide " 'reasonable notice' to former employees like Al-Safin" nor did Al-Safin "continue his employment with Circuit City, sign an acceptance, or accept the modification of the [substantive arbitration rules of the] 1998 DRRP in any other way." Slip op. at 661. *Second*, according to the majority opinion, "[t]he modification provision allows Circuit City to alter the rules and procedures governing arbitration almost at will" and, thus, "Rule 19, which permits this conduct, is substantively unconscionable under Washington law and . . . the modification provision is therefore unenforceable." Slip op. at 660.

I believe that the majority opinion errs in both regards and, thus, believe that the DRRP in effect at the time Al-Safin ulti-

mately files with Circuit City the Arbitration Request Form and accompanying fee, rather than the DRRP in effect in 1998, govern the arbitration.

## A.

In concluding that " 'an employer's unilateral change in policy will not be effective [under Washington law] until employees receive reasonable notice of the change' and accept the change," Slip op. at 660, the majority opinion relies solely on *Gaglidari* v. *Denny's Restaurants, Inc.*, 815 P.2d 1362 (Wash. 1991) (en banc). There, Denny's hired Gaglidari to work as a bartender and, on her first day of work, provided her with a copy of the 1979 employee handbook. *Id.* at 1364. The 1979 employee handbook contained a provision stating that fighting while *on duty* was grounds for immediate dismissal, but provided for "counseling review and review by a certain level manager" for rule infractions not covered by the immediate dismissal provision. *Id.* In 1986, Denny's gave Gaglidari an "alcoholic beverage handbook," which contained a provision stating that fighting while *on company premises*, whether or not while on duty, was grounds for immediate dismissal. *Id.* In 1987, while off duty, Gaglidari was involved in a fight at a Denny's and was fired shortly thereafter. *Id.* at 1364-65. Gaglidari sued Denny's for breach of the employment contract as set forth in the 1979 employee handbook, and the jury returned a verdict for Gaglidari. *Id.* at 1365.

On appeal, the Washington Supreme Court reversed the judgment entered upon such verdict and remanded for a new trial, holding that the 1979 employee handbook gave rise to a contract but that its terms were modified by the alcoholic beverage handbook that Gaglidari received in 1986. *Id.* at 1365-66. Although acknowledging that "[a]n employer may unilaterally amend or revoke policies and procedures established in an employee handbook," the court cited to *Bankey* v. *Storer Broadcasting Co.*, 443 N.W.2d 112, 113 (Mich. 1989), for the proposition that "an employer's unilateral

change in policy will not be effective until employees receive reasonable notice of the change." *Gaglidari*, 815 P.2d at 1367. Quoting *Bankey*, the court continued: " 'An employer may, *without an express reservation of the right to do so*, unilaterally change its written policy from one of discharge for cause to one of termination at will, provided that the employer gives affected employees reasonable notice of the policy change.' " *Id.* (emphasis added). The court reasoned: "The reasonable notice rule of *Bankey* is persuasive because it is unfair to place the burden of discovering policy changes on the employee. While the employee is bound by unilateral acts of the employer, it is incumbent upon the employer to inform employees of its actions." *Id.* The court then concluded that the 1986 alcoholic beverage handbook did achieve a modification of the employment contract:

> Plaintiff's receipt of the handbook satisfied the requisites of contract formation. Defendant extended an offer by providing the handbook and training plaintiff on alcoholic beverage service in accordance with the requirements contained in the handbook. Plaintiff accepted the offer by signing for the handbook and participating in the training. The consideration was plaintiff's continuation of her employment.
>
> *The handbook also achieved a unilateral modification of defendant's policies. Plaintiff had notice of the provisions of the handbook because she signed a form saying she read it and understood it.*

*Id.* at 1367-68 (internal citation omitted; emphasis added).

With that background, it is clear that *Gaglidari* is inapposite and that the reasonable-notice requirement it announced is not nearly so broad as the majority opinion suggests.

*First*, contrary to what the majority opinion asserts, Slip op. at 659-61, the reasonable-notice requirement is satisfied by

notice alone, regardless whether the employee accepts the change in policy. Again contrary to what the majority opinion assumes, Slip op. at 650-61, the sole articulated *purpose* of the reasonable-notice requirement is *not* to afford the at-will employee an opportunity to accept, reject or negotiate an offer from the employer. Rather, as the court in *Gaglidari* stated: "The reasonable notice rule of *Bankey* is persuasive because it is unfair to place the burden of *discovering* policy changes on the employee." 815 P.2d at 1367 (emphasis added). In other words, it would be unfair to allow an employee — even an employee at will — to be fired for a rule violation, if the rule had not been made known to her. Thus, the court in *Gaglidari* held *alternatively* that the "[p]laintiff's receipt of the [1986 alcoholic beverage] handbook satisfied the requisites of contract formation" and that, because the "[p]laintiff had notice of the provisions of the handbook," "[t]he handbook also achieved a unilateral modification of defendant's policies." *Id.* at 1367-68. Nothing in *Gaglidari* varied the well-settled common-law principles of at-will employment: the terms of employment and of its termination are set by the employer.

This interpretation of the scope and purpose served by *Gaglidari*'s reasonable-notice requirement was confirmed in *Govier* v. *North Sound Bank*, 957 P.2d 811, 813-14 (Wash. Ct. App. 1998), wherein a bank presented Govier with an employment agreement that changed the terms of her employment. Govier refused to sign the agreement, was fired, and then sued for breach of contract under the prior terms of employment. *Id.* at 814. The trial court granted the bank's motion for summary judgment. *Id.* On appeal to the Washington Court of Appeals, Govier contended that although the bank had presented her with the new terms, she did not have "reasonable notice" because she had not been notified of the changes a reasonable length of time before their effective date. *Id.* at 816. She reasoned that "the reasonable notice requirement is necessary 'to give the employee an opportunity to make a reasoned decision about whether to stay or leave.' "

*Id.* The court rejected this argument, holding that the purpose of the reasonable notice requirement is merely to inform employees of policy changes because " 'it is unfair to place the burden of *discovering* policy changes on the employee.' " *Id.* at 817 (emphasis in original).[2]

---

[2]This interpretation also finds support in *Thompson* v. *St. Regis Paper Co.*, 685 P.2d 1081 (Wash. 1984) (en banc), wherein the Washington Supreme Court first enunciated the principle that an at-will employment relationship could be modified by an employee handbook. There, Thompson was asked to resign because he " 'stepped on somebody's toes.' " *Id.* at 1083. No other reason was given. *Id.* Thompson sued for breach of contract, and the company moved for summary judgment, arguing that the employment relationship was terminable at will. *Id.* Thompson responded with the company's "Policy and Procedural Guide," which he argued provided that he could be fired only for cause. *Id.* at 1084. The trial court granted the company's motion. *Id.*

On appeal, the Washington Supreme Court reversed and remanded, holding first that "the employer's right to terminate an at will employee can be contractually modified and, thus, qualified by statements contained in employee policy manuals or handbooks issued by employers to their employees." *Id.* at 1087. Under this "contractual analysis," "the requisites of contract formation, offer, acceptance and consideration are necessary predicates to establishing that policies in an employment manual are part of the employees' original employment contract or part of the employment contract as modified by the parties." *Id.*

Continuing, the court held: "*Independent of this contractual analysis*, however, . . . employers may be obligated to act in accordance with policies as announced in handbooks issued to their employees." *Id.* (emphasis added). Relying on a promissory estoppel theory, the court reasoned:

> [T]he principal, though not exclusive, reason employers issue such manuals is to create an atmosphere of fair treatment and job security for their employees.
>
> *   *   *
>
> This may create an atmosphere where employees *justifiably rely* on the expressed policies and, thus, justifiably expect that the employers will do the same. Once an employer announces a specific policy or practice, especially in light of the fact that he expects employees to abide by the same, the employer may not treat its promises as illusory.

*Id.* at 1087-88 (emphasis in original).

Thus, the fact that "Al-Safin did not continue his employment with Circuit City, sign an acceptance, or accept the modification of the [substantive arbitration rules of the] 1998 DRRP in any other way," Slip op. at 661, would have been irrelevant under *Gaglidari* had Al-Safin been employed with Circuit City at the time the modifications were made and, contrary to the majority opinion's assertion otherwise, Slip op. at 661 n.4, can be no less irrelevant under the circumstances here. As explained above, *Gaglidari*'s reasonable-notice requirement neither requires nor is premised upon the employee having an opportunity to accept, reject or negotiate changes in employment policies — regardless when those changes occur. Further, it bears repeating, by virtue of continuing his employment with Circuit City after the December 31, 1997 amendment to Rule 19 went into effect, Al-Safin assented to the modification provision itself.

*Second*, the fact that Al-Safin may not have received reasonable notice of the modifications made to the substantive provisions in the DRRP from 1998 to 2003 is likewise irrelevant under *Gaglidari*. As explained above, the purpose of the reasonable-notice requirement is to inform employees of policy changes because "it is unfair to place the burden of discovering policy changes on the employee." *Gaglidari*, 815 P.2d at 1367; *accord Govier*, 957 P.2d at 817. This prevents situations in which employees are fired or suffer other adverse employment action on the basis of conduct that had been permissible but later was made impermissible by an unpublicized policy. *See Thompson*, 685 P.2d at 1087.

Thus, the reasonable-notice requirement serves no purpose once the employment relationship has ended. Why give notice of new rules to former employees who can no longer be fired for their violations? To insist on the necessity of "reasonable notice" in such circumstances is to venerate an abstraction. *See United States* v. *Griefen*, 200 F.3d 1256, 1263 (9th Cir. 2000) ("Cessante ratione legis, cessat et ipsa lex[.] (The reason of the law ceasing, the law itself also ceases)."); *ATU*

*Legislative Council of Washington* v. *Washington*, 40 P.3d 656, 661 (Wash. 2002) (en banc) (same); *State ex rel. King County* v. *Superior Court of Pierce County*, 176 P. 352, 355 (Wash. 1918) ("The law being founded in reason boasts as its first cardinal principle that, when the reason for the law ceases, the law itself ceases."). Indeed, there appear to be no Washington cases — including *Gaglidari* — in which the reasonable-notice requirement was invoked when the change in employee policies occurred after the employment relationship had terminated.

Here, there is no claim that Al-Safin's employment was terminated because of a violation of the modification provision in Rule 19 of the DRRP in effect in 1998. Likewise, the modifications made to the substantive provisions in the DRRP from 1998 to 2003 — all of which occurred after Al-Safin's employment was terminated — had no bearing on why Al-Safin's employment was terminated; rather, they concern only the manner in which the arbitration is to occur. In brief: As the reason for the reasonable-notice requirement does not exist, neither does the rule.

*Third*, unlike Circuit City, the employer in *Gaglidari* did not reserve its right to make changes to the employee handbook. The Michigan case on which *Gaglidari* relies in setting forth the reasonable-notice requirement suggests that the requirement is limited to situations in which the employer does not make such a reservation:

> "An employer may, *without an express reservation of the right to do so*, unilaterally change its written policy from one of discharging for cause to one of termination at will, provided that the employer gives affected employees reasonable notice of the policy change."

*Gaglidari*, 815 P.2d at 1367 (quoting *Bankey*, 443 N.W.2d at 113) (emphasis added). Such reservations or disclaimers are

well-recognized under Washington law. *Thompson*, 685 P.2d at 1088 ("[T]he employer may specifically reserve a right to modify [employment] policies or write them in a manner that retains discretion to the employer.").

This distinction is not without substance given the discussion above explaining that the reasonable-notice requirement is required not to permit for an acceptance or rejection of an employer's offer by the employee, but rather because it provides the basis for the justifiable reliance on which a promissory estoppel theory might be based. Where the employer has made a disclaimer — that is, has reserved the right to make changes — employees cannot justifiably rely on the previously outlined policies.

Neither *Gaglidari* nor its reasonable-notice requirement are applicable here.

### B.

The majority opinion correctly concludes that whether the provisions of the DRRP are unconscionable is a question of Washington law. Slip op. at 656. But in concluding that modification provision in Rule 19 of the DRRP in effect in 1998 "is substantively unconscionable under Washington law and that the modification provision is therefore unenforceable," the majority opinion cites no Washington law at all. Slip op. at 660. Instead, the majority opinion relies on two Ninth Circuit cases that purport to interpret California law, Slip op. at 660, and presumably on its later conclusion that "California applies virtually the same definition of substantive unconscionability as Washington." Slip op. at 662.

To begin, the two Ninth Circuit cases on which the majority opinion relies — *Ingle* v. *Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003), and *Circuit City Stores, Inc.* v. *Mantor*, 335 F.3d 1101, 1107(9th Cir. 2003) — themselves cite no state cases that discuss whether, let alone hold that, the

modification provisions at issue or even similar modification provisions are substantively unconscionable. Thus, their analyses of California law on this point are not so thorough that we should reflexively import their holdings to Washington law.

Moreover, there is good reason not to do so here, even though the Washington Supreme Court has cited with approval Ninth Circuit cases interpreting California law in adjudicating the unconscionability of terms quite different from the modification provision at issue here, Slip op. at 663 n.6, and even if it is correct that as a general matter California law and Washington law on unconscionability are similar. Specifically, although there appear to be no Washington cases addressing whether the provision at issue or one similar to it is substantively unconscionable, the Washington Supreme Court has long held in no uncertain terms that an employer may reserve the right unilaterally to change the terms of an employment relationship: "[T]he employer may specifically reserve a right to modify [employment] policies or write them in a manner that retains discretion to the employer." *Thompson*, 685 P.2d at 1088. *Gaglidari* affirmed this principle, and its reasonable-notice requirement in no way undercut the employer's ability to make unilateral changes: "An employer may *unilaterally* amend or revoke policies and procedures established in an employee handbook. However, an employer's *unilateral* change in policy will not be effective until employees receive reasonable notice of the change." 815 P.2d at 1367 (emphasis added; internal citations omitted).

Further, the majority opinion overlooks the salient fact that under Rule 19 of the DRRP in effect at the time Al-Safin's employment was terminated, Circuit City could not have acted "unilaterally" in changing the DRRP until the end of the year. Thus, Al-Safin, whose employment was terminated in November 1998, had over a full month in which he could have insured himself of arbitration under the then-current DRRP by taking action: requesting arbitration and tendering

the filing fee before December 31, 1998. Under Washington law, voluntarily refusing to invoke rights in a timely manner may in some contexts constitute a waiver of those rights. *See*, *e.g.*, *International Association of Firefighters, Local No. 469* v. *Public Employment Relations Commission of Washington*, 686 P.2d 1122, 1125-27 (Wash. Ct. App. 1984) (holding that although a union's waiver of statutorily protected bargaining rights and its concomitant assent to unilateral employer action in lieu of collective bargaining must be "intentional and voluntary," a failure timely to request negotiations following actual knowledge of the employer's intentions where there is sufficient time to "meaningfully" do so constitutes waiver). Whether Al-Safin's inactivity amounted to a waiver or consent, and whether that waiver or consent could change the character of any subsequent modifications to the DRRP from "unilateral" to "consented to" or "mutual" is a question of Washington law. It was not a question raised in either of our cases involving the enforceability of Circuit City's arbitration agreements under California law.

Thus, I am not nearly so confident as are my colleagues that the modification provision in Rule 19 of the DRRP in effect in 1998 is substantively unconscionable under Washington law.[3] At the very least, the absence of Washington law directly on point, coupled with the *Thompson* and *Gaglidari* line of cases and Al-Safin's ability to have invoked the substantive provisions of the DRRP in effect in 1998, create sufficient doubt about the relevance of *Ingle* and *Mantor* to warrant our certifying the question to the Washington Supreme Court.[4]

---

[3]Why the DRRP in effect in 2003, made applicable to the arbitration here by the plain text of the modification provision in Rule 19 of the DRRP in effect in 1998, are *themselves* not unconscionable is discussed in Part II below.

[4]Washington provides for certification pursuant to Revised Code of Washington § 2.60.020 and Washington Rule of Appellate Procedure 16.16(a) where there is a question of state law that has not been "clearly determined" and its resolution is necessary to the disposition of the proceeding in federal court.

II.

Because I believe that the modification provision in Rule 19 of the DRRP in effect in 1998 is enforceable under Washington law, I would find that the DRRP in effect at the time Al-Safin files his Arbitration Request Form and accompanying filing fee govern the arbitration. Although Al-Safin did not file his Arbitration Request Form and accompanying filing fee prior to 2003, the record does not indicate whether he has since filed the appropriate form and fee or whether Circuit City has promulgated DRRP beyond those in 2003. Thus, it is not evident whether the DRRP in effect in 2003 or some later DRRP are applicable.

Assuming, however, that the DRRP in effect in 2003 are applicable, Al-Safin concedes that these rules were substantially revised such that many of the substantively unconscionable provisions in the earlier rules were removed. In fact, he argues that only two provisions beyond the modification provision discussed above are substantively unconscionable.

*First*, Al-Safin argues that the DRRP in effect in 2003 include a provision that requires arbitration decisions to be confidential and, thus, is substantively unconscionable both because it places Circuit City in " 'a far superior legal posture by ensuring that none of its opponents have access to precedent' " and because " 'the unavailability of arbital decisions may prevent potential plaintiffs from obtaining the information needed to build a case of intentional misconduct or unlawful discrimination.' " However, Rule 12 of the DRRP in effect in 2003 states: "Associates who have agreed to arbitration may request copies of arbitration decisions in a given case." Thus, the confidentiality provision is not so " 'one-sided or overly harsh' " so as to be " '[s]hocking to the conscience,' " " 'monstrously harsh,' " or " 'exceedingly calloused' " and, thus, substantively unconscionable. *See Nelson* v. *McGoldrick*, 896 P.2d 1258, 1262 (Wash. 1995) (en banc).

*Second*, Al-Safin argues that the DRRP in effect in 2003 prohibit class or consolidated arbitrations and that this is substantively unconscionable. Again, there appears to be no Washington law addressing whether such provisions are substantively unconscionable. *See Stein* v. *Geonerco, Inc.*, 17 P.3d 1266, 1271 & n.2 (Wash. Ct. App. 2001) (noting that "Washington courts have not specifically addressed class arbitration," and holding that the court "cannot compel class arbitration" in the absence of "relevant statutory provisions that authorize class arbitration," but not reaching whether "due process and policy grounds" may otherwise "permit[ ] class arbitration"). However, an analogous line of cases suggests that the Washington courts would not find the provision substantively unconscionable on the facts here.

In *Mendez* v. *Palm Harbor Homes, Inc.*, 45 P.3d 594, 597, 601, 603 (Wash. Ct. App. 2002), the trial court denied a motion to compel arbitration pursuant to an arbitration agreement, holding that the agreement was unconscionable because the "prohibitive entry costs of arbitration compared to the entry costs of trial" "effectively preclude[d] [Mendez] from pursuing his claims against Palm Harbor." Importantly, costs so prohibitive as to deter arbitration is the implicit concern that led the Ninth Circuit to conclude on the basis of California law that the provision in Circuit City's arbitration agreements that preclude class or consolidated arbitration is substantively unconscionable. *See Ingle*, 328 F.3d at 1176 ("Circuit City, through its bar on class-wide arbitration, seeks to insulate itself from class proceedings while conferring no corresponding benefit to its employees in return."); *see also Mantor*, 335 F.3d at 1107 & n.14 (citing *Ingle*, 328 F.3d at 1175-76). The Washington Court of Appeals affirmed, "approv[ing] a new rule for this State allowing an equitable and legal prohibitive cost defense to contractually agreed arbitration," *Mendez*, 45 P.3d at 597, but limiting the defense to "*when the party opposing arbitration reasonably shows in law or equity that prohibitive costs are likely to render the arbitral forum inaccessible.*" *Id.* at 605 (emphasis added);

*accord Heaphy* v. *State Farm Mutual Automobile Insurance Co.*, 72 P.3d 220, 224-25 (Wash. Ct. App. 2003) (rejecting prohibitive cost defense in the absence of any evidence of prohibitive costs). The Washington Supreme Court has recently approved this approach. *Zuver* v. *Airtouch Communications, Inc.*, No. 74156-5, 2004 WL 3016484, at *6-7 (Wash. Dec. 23, 2004) (en banc); *Adler* v. *Fred Lind Manor*, No. 74701-6, 2004 WL 3016302, at *9 (Wash. Dec. 23, 2004) (en banc). Al-Safin has made no claim nor showing of prohibitive costs which would render the arbital forum inaccessible. Neither has he evinced any interest in initiating a class or consolidated arbitration. Absent such predicate showing, Washington law would not hold the relevant provision of the DRRP unconscionable.

Further, even if the provision that there be no class or consolidated arbitration *were* unconscionable, it could be severed pursuant to the severance provision in Rule 18 of the DRRP in effect in 2003. *Zuver*, 2004 WL 3016484, at *11 (noting that "when parties have agreed to a severability clause in an arbitration agreement, courts often strike the offending unconscionable provisions to preserve the contract's essential term of arbitration," and doing so when "faced with only two unconscionable provisions"); *Adler*, 2004 WL 3016302, at *12 (holding that where the "arbitration agreement contains just two substantively unconscionable provisions" and where "[t]he primary thrust of [the] agreement is the agreement to arbitrate," the court can sever those terms "without disturbing the primary intent of the parties to arbitrate their disputes").

## III.

The kernel of truth in this case is that Al-Safin is so desirous to litigate in federal district court rather than to arbitrate, that he refuses to accept the substantial concessions that Circuit City made when it promulgated its new DRRP in 2003 relative to the DRRP that obtained and which were within Al-Safin's reach when his employment was terminated in 1998.

Instead, he lashes himself to the DRRP in effect in 1998 (except for the modification provision in Rule 19) in the apparently well-founded hope that this court would find the substantive provisions in those DRRP so unconscionable the arbitration agreement as a whole must founder. By holding that the modification provision in Rule 19 of the DRRP in effect in 1998 is unenforceable and that various other provisions in the same DRRP are substantively unconscionable, the majority opinion accedes to Al-Safin and, in so doing, contravenes Washington law.

I believe that the modification provision in Rule 19 of the DRRP in effect in 1998 is enforceable under Washington law or, at the very least, that there is sufficient doubt as to certify that question, and the further question whether Al-Safin's inaction in late 1998 rendered the modification provision "mutual" rather than "unilateral," to the Washington Supreme Court. I believe further that the provisions in the DRRP in effect in 2003 to which Al-Safin objects are not substantively unconscionable under Washington law. Accordingly, I would reverse the district court's denial of Circuit City's motion to dismiss and compel arbitration (or, at the very least, certify the relevant questions to the Washington Supreme Court) and, thus, respectfully dissent.