CIRCUIT CITY STORES, INC.,
a Virginia Corporation,
Petitioner–Appellee,

v.

Paul MANTOR, an individual,
Respondent–Appellant.

No. 02–55230.

United States Court of Appeals,
Ninth Circuit.

Submitted March 7, 2003.[1]

Decided July 22, 2003.

---

1. The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

Michael H. Crosby, San Diego, California, for the respondent-appellant.

Rex Darrell Berry, Livingston & Mattesich, Sacramento, California, for the petitioner-appellee.

Before PREGERSON, THOMAS, Circuit Judges, and OBERDORFER,[2] Senior District Judge.

## OPINION

PREGERSON, Circuit Judge:

Paul Mantor appeals from the district court's grant of Circuit City Stores, Inc's

**2.** The Honorable Louis F. Oberdorfer, Senior Judge, United States District Court for the District of Columbia, sitting by designation.

(Circuit City) motion to compel arbitration. Mantor argues on appeal that Circuit City's arbitration agreement is unenforceable under California law of unconscionability. We agree and therefore reverse and remand.

### Facts and Procedural Background

Paul Mantor worked for Circuit City from August 1992 until October 2000, when Circuit City terminated his employment. When Circuit City hired Mantor, it had no arbitration program. In 1995, Circuit City implemented an arbitration program called the "Associate Issue Resolution Program" (AIRP).[3] Circuit City emphasized to managers the importance of full participation in the AIRP, claiming that the company had been losing money because of lawsuits filed by employees. Circuit City management stressed that employees had little choice in this matter; they suggested that employees ought to sign the agreement or prepare to be terminated. Although Circuit City circulated the forms regarding the AIRP in 1995, Mantor was able to avoid either signing up or openly refusing to participate[4] in

the AIRP for three years. In 1998, Circuit City District Manager Brad Weiland and Circuit City's Personnel Manager for Northern California Karen Craig arranged a meeting with Mantor to discuss Mantor's participation in the AIRP. During this meeting, Mantor asked Weiland and Craig what would happen should he decline to participate in the arbitration program. The Circuit City managers responded to the effect that he would have no future with Circuit City. On February 13, 1998, Mantor agreed to participate in the AIRP, acknowledging in writing his receipt of (1) an "Associate Issue Resolution Handbook," (2) the "Circuit City Dispute Resolution Rules and Procedures," and (3) a "Circuit City Arbitration Opt Out Form."

On October 10, 2001, a year after Circuit City terminated his employment, Mantor brought a civil action in state court, alleging twelve causes of action.[5] On October 17, 2001, to preserve his right to arbitrate his claims in the event that a court determined that his claims were subject to arbitration, Mantor submitted an Arbitration Request Form and a cashier's check in the amount of seventy-five dollars to Circuit City's Arbitration Coordinator.[6]

---

3. Circuit City refers to all job applicants and to current and former employees as "Associates."

4. Circuit City circulated an "opt-out" form by which its employees could ostensibly elect not to participate in the AIRP.

5. The causes of action included: (1) tortious termination in violation of public policy; (2) retaliation; (3) breach of contract; (4) breach of implied covenant of good faith and fair dealing; (5) violation of California Labor Code § 970; (6) fraud-intentional misrepresentation; (7) fraud-negligent misrepresentation; (8) intentional infliction of emotional distress; (9) negligent infliction of emotional distress; (10) defamation; (11) failure to pay earned wages and reimburse expenses; and (12) age discrimination.

6. The AIRP requires employees to file the Arbitration Request Form—along with seventy-five dollars—with Circuit City to initiate a complaint. Circuit City twice rejected Mantor's arbitration request. The first time Circuit City rejected the request "for lack of completeness" because Mantor's attorneys—not Mantor himself—signed the request. The second time Circuit City rejected the request because Mantor's attorneys redacted certain language on the form to avoid waiving Mantor's right to litigate the dispute. Although we fail to see why Mantor's attorneys' signatures did not suffice the first time, *see* Fed. R.Civ.P. 11(a); Cal. Civ. P. § 283 (2000), we conclude that Circuit City implicitly acknowledged the validity of the arbitration request when it sent a letter—dated November 26, 2001—to the National Arbitration and Media-

On November 26, 2001, Circuit City petitioned the district court to compel arbitration under 9 U.S.C. § 4 (2000). On December 27, 2001, following briefing and oral arguments, the district court granted Circuit City's motion to compel arbitration and stayed the state court action pending arbitration. On January 25, 2002, Mantor filed a timely notice of appeal with this court. On appeal, Mantor argues that the district court erred in granting the order to compel arbitration because the arbitration agreement is unconscionable under California contract law. Mantor also contends that this court's decision in *Duffield v. Robertson Stephens Co.*, 144 F.3d 1182 (9th Cir.1998), which precludes compulsory arbitration of claims under Title VII and California's Fair Employment and Housing Act (FEHA), compels the conclusion that the arbitration agreement is unenforceable.[7]

**Discussion**

■ We have jurisdiction to review an order compelling arbitration under 9 U.S.C. § 16(a)(3) (2000). *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 84–89, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000); *Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299, 1302 (9th Cir.1994), *cert. denied*, 516 U.S. 812, 116 S.Ct. 61, 133 L.Ed.2d 24 (1995). We review de novo the district court's order compelling arbitra-

tion. *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 n. 2 (9th Cir.2002) (*Adams III*).

I.

■ Mantor contends that Circuit City's arbitration agreement[8] is unconscionable under California contract law. Federal law provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable" except when grounds "exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2002); *Ingle*, 328 F.3d at 1170. But federal law "does not supplant state law governing the unconscionability of adhesive contracts." *Ingle*, 328 F.3d at 1174 n. 10. In California, courts may refuse to enforce an arbitration agreement if it is unconscionable.[9] Cal. Civ.Code § 1670.5 (1999). Unconscionability exists when one party lacks meaningful choice in entering a contract or negotiating its terms and the terms are unreasonably favorable to the other party. *Ingle*, 328 F.3d at 1170; *A & M Produce Co. v. FMC Corp.*, 135 Cal.App.3d 473, 486, 186 Cal.Rptr. 114 (1982). Accordingly, a contract to arbitrate is unenforceable under the doctrine of unconscionability when there is "both a procedural and substantive element of unconscionability." *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 783 (9th Cir.2002); *accord Armendariz v.*

tion firm for the purpose of selecting an arbitrator for the Mantor dispute.

7. We decide this case solely under California law of unconscionability. Thus, we need not reach Mantor's argument that *Duffield* precludes enforcement of Circuit City's arbitration agreement. *See Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1169 n. 2 (9th Cir.2003).

8. The arbitration agreement Mantor signed provided that the rules governing an arbitration proceeding would be those in effect at the time Mantor submitted his Arbitration Re-

quest Form and filing fee. The 2001 Dispute Resolution Rules and Procedures were in effect on October 17, 2001, the date he first submitted the Arbitration Request Form and filing fee. We therefore review these rules for the purposes of this appeal.

9. Because Mantor was employed in California, we evaluate the arbitration agreement under the contract law of that state. *Ingle*, 328 F.3d at 1170; *Adams III*, 279 F.3d at 892; *see also Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 937 (9th Cir.2001) (applying Montana law in deciding whether arbitration clause was valid).

*Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114, 99 Cal.Rptr.2d 745, 6 P.3d 669, 690 (2000). But procedural and substantive unconscionability "need not be present in the same degree." *Armendariz,* 99 Cal.Rptr.2d 745, 6 P.3d at 690. "[T]he more substantively oppressive the contract term, the less evidence of procedural · unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*

### A.

To determine whether Circuit City's arbitration agreement with Mantor is procedurally unconscionable we must evaluate how the parties negotiated the contract and "the circumstances of the parties at that time." *Ingle,* 328 F.3d at 1171 (quoting *Kinney v. United Healthcare Servs., Inc.,* 70 Cal.App.4th 1322, 1329, 83 Cal.Rptr.2d 348, 352–53 (1999)). One factor courts consider to determine whether a contract is procedurally unconscionable is whether the contract is oppressive. *Id.* Courts have defined oppression as springing "from an inequality of bargaining power[that] results in no real negotiation and an absence of meaningful choice." *Stirlen v. Supercuts, Inc.,* 51 Cal. App.4th 1519, 1532, 60 Cal.Rptr.2d 138, 145 (1997) (internal quotation marks and citations omitted). Another factor courts look to is surprise, defined as "the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.*

Circuit City argues that because Mantor was given an opportunity to "opt-out" of the arbitration agreement, the agreement was not oppressive—and therefore not procedurally unconscionable. In support of its argument, Circuit City cites

our decisions in *Circuit City Stores, Inc. v. Najd,* 294 F.3d 1104 (9th Cir.2002), and *Circuit City Stores, Inc. v. Ahmed,* 283 F.3d 1198 (9th Cir.2002). We do not agree that *Najd* and *Ahmed* guide our analysis here; in both *Najd* and *Ahmed,* the arbitration agreement did not prove procedurally unconscionable specifically because both Najd and Ahmed had a *meaningful* opportunity to opt-out of the arbitration program. *See Najd,* 294 F.3d at 1108; *Ahmed,* 283 F.3d at 1200. Mantor had no such *meaningful* opportunity.

In 1995, Mantor was given an "opt-out" form by which he could elect not to participate in the arbitration program. But Circuit City management impliedly and expressly pressured Mantor not to opt-out, and even resorted to threatening his job outright should Mantor exercise his putative "right" to opt-out.[10] The fact that Circuit City management pressured and even threatened Mantor into assenting to the arbitration agreement demonstrates that he had no *meaningful* opportunity to opt-out of the program. When a party to a contract possesses far greater bargaining power than another party, or when the stronger party pressures, harasses, or compels another party into entering into a contract, " 'oppression and, therefore, procedural unconscionability, are present.' " *See Ingle,* 328 F.3d at 1172 (quoting *Ferguson,* 298 F.3d at 784). A meaningful opportunity to negotiate or reject the terms of a contract must mean something more than an empty choice. At a minimum, a party must have reasonable notice of his opportunity to negotiate or reject the terms of a contract, *and* he must have an actual, meaningful, and reasonable choice to exercise that discretion. In light of Circuit City's insistence that Mantor sign the arbitration agreement—under

---

**10.** Circuit City does not offer evidence to controvert Mantor's allegation that he was pres-

sured and threatened into assenting to the arbitration agreement.

pain of forfeiting his future with the company—the fact that in 1995 Mantor was presented with an opt-out form does not save the agreement from being oppressive, for Mantor had no meaningful choice, nor any legitimate opportunity, to negotiate or reject the terms of the arbitration agreement. Thus, this court's decisions in *Ingle* and *Adams III*, rather than our decisions in *Najd* and *Ahmed*, govern this appeal. Accordingly, because Circuit City presented the arbitration agreement to Mantor on an "adhere-or-reject" basis we conclude that the arbitration agreement was procedurally unconscionable.[11] *See Ingle*, 328 F.3d at 1172; *Adams III*, 279 F.3d at 893.

### B.

■ We turn now to consider whether the arbitration agreement is substantively unconscionable. Substantive unconscionability concerns the " 'terms of the agreement and whether those terms are so one-sided as to shock the conscience.' " *Ingle*, 328 F.3d at 1172 (quoting *Kinney*, 70 Cal. App.4th at 1330, 83 Cal.Rptr.2d at 353 (citations omitted)).

■ To evaluate the substantive terms of a contract, a court must analyze the contract "as of the time [it] was made." *A & M Produce Co.*, 135 Cal.App.3d at 487, 186 Cal.Rptr. 114 (citation omitted).

Many of the terms we have already held to be substantively unconscionable in earlier versions of Circuit City's arbitration

agreement remain in the 2001 version we review in this case. In *Ingle*, we reviewed the 1998 version of Circuit City's arbitration agreement, holding that the scope of the agreement itself as well as the terms concerning the statute of limitations, the prohibition on class actions, the filing fee, cost-splitting, remedies, and Circuit City's unilateral power to modify or terminate the arbitration agreement were substantively unconscionable. *Ingle*, 328 F.3d at 1172–79.

■ We note that Circuit City has modified and improved its arbitration agreement to comport with our holding regarding limitations on available remedies.[12] But the substantively unconscionable provisions concerning the statute of limitations,[13] class actions,[14] cost-splitting,[15] and Circuit City's unilateral power to modify or terminate the arbitration agreement[16] remain in the version of the agreement we review in this case. For the reasons expressed in prior decisions,[17] we again hold that these terms are substantively unconscionable.

### 1. Filing Fee/Waiver Provision

■ Under its arbitration program, Circuit City requires an employee to pay a seventy-five dollar filing fee to initiate an arbitration proceeding. In *Ingle*, we criticized the filing fee rule in the 1998 version of the arbitration agreement because "the

11. Because we base our conclusion that the agreement is procedurally unconscionable on the agreement's oppressiveness, we need not pass judgment on whether surprise exists in this arbitration agreement.

12. In *Ingle* and *Adams III*, we held that the restrictions on remedies available to plaintiffs under Circuit City's arbitration agreement were substantively unconscionable. *Ingle*, 328 F.3d at 1178–79; *Adams III*, 279 F.3d at 894. The arbitration agreement we review in this case directs the arbitrator to "award appropriate relief in accordance with applicable

law," which brings this provision in line with our previous holdings.

13. *See Ingle*, 328 F.3d at 1175.

14. *See id.* at 1175–76.

15. *See id.* at 1177–78.

16. *See id.* at 1179.

17. *See id.* at 1172–79; *Adams III*, 279 F.3d at 893–96.

employee is required to pay Circuit City for the privilege of bringing a complaint." This, we held, was "not the '*type* of expense that the employee would be required to bear' in federal court." *Id.* at 1177 (quoting *Armendariz,* 99 Cal.Rptr.2d 745, 6 P.3d at 687). Thus, we concluded that it was improperly one-sided.

We also observed that "Circuit City's [1998] arbitration agreement . . . makes no . . . provision for waiver of the filing fee (or other fees and costs of arbitration)." *Id.* at 1177, 99 Cal.Rptr.2d 745, 6 P.3d 669. In federal court, indigent plaintiffs may be exempt from having to pay court fees. *Id.;* 28 U.S.C. § 1915(a)(1) (2000). In the 2001 version of the arbitration agreement we review here, Circuit City has revised the rule to allow for waiver of the filing fee. But the fact that Circuit City vests in itself the sole discretion to consider applications for waivers indicates that the process of filing could be halted unilaterally by Circuit City if an employee does not have the means to pay the seventy-five dollar filing fee. The fee waiver provision might not be one-sided if the discretion to waive the fee were assigned to a disinterested party.[18] However, because the fee waiver rule (1) provides that an employee must pay an interested party "for the privilege of bringing a complaint"[19] and (2) assigns Circuit City, an interested party, the responsibility for the decision whether to waive the filing fee, this rule is manifestly one-sided, and therefore, substantively unconscionable.

### 2. Scope of Circuit City's Arbitration Agreement

 We recognize that Circuit City has amended its arbitration agreement to indicate that legal claims brought by Circuit City and employees both are subject to arbitration. The agreement we reviewed in *Ingle* expressly applied to "all claims of an Associate." Circuit City has since excised the words limiting the scope of the agreement to employee claims. But we also noted in *Ingle* that "[e]ven if the limitation to claims brought by employees were not explicit, an arbitration agreement between an employer and an employee ostensibly binds to arbitration only employee-initiated actions." *Id.* at 1175. We reasoned that "[b]ecause the possibility that Circuit City would initiate an action against one of its employees is so remote, the lucre of the arbitration agreement flows one way: the employee relinquishes rights while the employer generally reaps the benefits of arbitrating its employment disputes." *Id.* at 1174 (footnote omitted). Thus, we concluded that:

> under California law, a contract to arbitrate between an employer and an employee . . . raises a rebuttable presumption of substantive unconscionability. Unless the employer can demonstrate that the effect of a contract to arbitrate is bilateral—as is required under California law—with respect to a particular employee, courts should presume such contracts substantively unconscionable.

*Id.* (footnote and citations omitted). This holding certainly would apply to the agreement we review in this case; however, this case had already been submitted by the time *Ingle* was decided. Circuit City, therefore, has not been given an opportunity to rebut the presumption that the arbitration agreement between Mantor and Circuit City is substantively uncon-

---

**18.** *Cf. Cheng–Canindin v. Renaissance Hotel Assoc.,* 50 Cal.App.4th 676, 687–88, 57 Cal. Rptr.2d 867 (1996) (holding that "a dispute resolution procedure is not an arbitration unless there is a third party decision maker . . . and a mechanism to assure a minimum level of impartiality with respect to the rendering of that decision").

**19.** *Ingle,* 328 F.3d at 1177.

scionable. While perhaps under other circumstances we would find it necessary to remand to the district court to allow Circuit City to present evidence tending to rebut the presumption that its arbitration agreement is substantively unconscionable, we need not remand in this case. Because so many other terms in this arbitration agreement are substantively unconscionable, we decline to enforce the agreement regardless of whether Circuit City would be able to rebut the presumption of substantive unconscionability regarding the scope of the agreement.

### C.

■■■■■ Under California law, a court has discretion whether to sever particular unconscionable terms or invalidate a contract entirely. Cal. Civ.Code § 1670.5(a) (1999). To assess whether unconscionable terms can be severed, a court considers whether the illegality is "central" or "collateral" to the purpose of the contract to determine whether an entire contract should be invalidated or whether only a particular term or set of terms should be severed. *Armendariz*, 99 Cal.Rptr.2d 745, 6 P.3d at 696–97. We are mindful of the federal policy in favor of arbitration agreements. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). But "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 686–87, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). As we discussed above, under California contract law, a party may not fashion an adhesive arbitration agreement that significantly limits the other party's ability to substantiate his legal claims. The arbitration agreement between Circuit City and Mantor violates that rule: the arbitration agreement was procedurally unconscionable and numerous provisions in Circuit City's arbitration agreement operate to benefit itself at its employees' expense. Because "[a]ny earnest attempt to ameliorate the unconscionable aspects of Circuit City's arbitration agreement would require this court to assume the role of contract author rather than interpreter," we hold that this agreement is unenforceable in its entirety. *Ingle*, 328 F.3d at 1180; *Adams III*, 279 F.3d at 895–96.

### Conclusion

Because we conclude that the Circuit City arbitration agreement is unconscionable under California contract law, we reverse the district court's order compelling arbitration and remand with instructions to allow the civil action to continue in state court.

**REVERSED and REMANDED.**