**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JACQUELIN DAVIS,
                    *Plaintiff-Appellant,*

v.

O'MELVENY & MYERS, a California
Limited Liability Corporation,
                    *Defendant-Appellee.*

No. 04-56039

D.C. No.
CV-04-01338-DT

OPINION

Appeal from the United States District Court
for the Central District of California
Dickran M. Tevrizian, District Judge, Presiding

Argued and Submitted
March 7, 2006—Pasadena, California

Filed May 14, 2007

Before: M. Margaret McKeown and Marsha S. Berzon,
Circuit Judges, and Samuel P. King,* District Judge.

Opinion by Judge King

---

*The Honorable Samuel P. King, Senior United States District Judge
for the District of Hawaii, Sitting by Designation.

## COUNSEL

Peter M. Hart, Los Angeles, California, for plaintiff-appellant Jacquelin Davis.

Adam P. KohSweeney (argued), Scott H. Dunham & Anne E. Garrett (on the briefs), O'Melveny & Myers LLP, Los Angeles, California, for defendant-appellee O'Melveny & Myers LLP.

## OPINION

KING, District Judge:

Plaintiff Jacqueline Davis (Davis) appeals the district court's order dismissing her action and compelling arbitration under 9 U.S.C. § 4 based upon an arbitration agreement with her former employer, Defendant O'Melveny & Myers (O'Melveny). On appeal, Davis challenges the enforceability of the arbitration agreement, contending that it is unconscio-

nable under California law. The merits of the underlying claims in her complaint are not at issue here. Because the arbitration agreement is unconscionable under California law, we reverse and remand.

## BACKGROUND

On August 1, 2002, O'Melveny adopted and distributed to its employees a new Dispute Resolution Program (DRP) that culminated in final and binding arbitration of most employment-related claims by and against its employees.[1] O'Melveny distributed the DRP via interoffice mail and posted it on an office intranet site. A cover memorandum stated: "Please read the attached and direct any questions you may have to a member of the Human Resources Department, the Legal Personnel Department, the Associate Advisory Committee or the Office of the Chair." Davis, who had worked as a paralegal at a Los Angeles, California, office of O'Melveny since June 1, 1999, received the DRP but apparently did nothing official to question the policy.

By its terms, the DRP became effective three months later, on November 1, 2002. It provides in bold, uppercase print: "THIS DISPUTE RESOLUTION PROGRAM (THE "PROGRAM") APPLIES TO AND IS BINDING ON ALL EMPLOYEES (INCLUDING ASSOCIATES) HIRED BY — OR WHO CONTINUE TO WORK FOR — THE FIRM ON OR AFTER NOVEMBER 1, 2002." Davis worked at O'Melveny until July 14, 2003.

On February 27, 2004, Davis filed this lawsuit under the

---

[1]The DRP was distributed "firm wide." O'Melveny has offices outside California and the United States; our review, however, is limited to California law as applied to the agreement between California parties. *See Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1105 n.9 (9th Cir. 2003) (*Mantor I*) (applying California law because employee was employed in California).

Federal Fair Labor Standards Act (FLSA) and various other state and federal labor statutes, alleging failure to pay overtime for work during lunch time and rest periods and for other work exceeding eight hours a day and 40 hours a week, as well as denial of rest and meal periods. In addition to claims under the FLSA, her nine-count complaint included claims for violations of California Labor Code §§ 558, 2698 and 2699, and for declaratory relief seeking a declaration that the DRP is unconscionable and that O'Melveny's enforcement of its provisions and other allegedly illegal behavior constituted unfair business practices under California's Unfair Business Practices Act. The complaint sought damages and injunctive relief on an individual basis and for "all others similarly harmed."

The DRP covers most employment-related claims, as follows:

> Except as otherwise provided in this Program, effective November 1, 2002, you and the Firm hereby consent to the resolution by private arbitration of all claims or controversies, past, present or future . . . in any way arising out of, relating to, or associated with your employment with the Firm or the termination of your employment . . . that the Firm may have against you or that you may have against the Firm. . . . The Claims covered by this Program include, but are not limited to, claims for wages or other compensation due; . . . . and claims for violation of any federal, state or other governmental constitution, law, statute, ordinance, regulation or public policy. . . .

> Except as otherwise provided in the Program, neither you nor the Firm will initiate or pursue any lawsuit or administrative action (other than filing an administrative charge of discrimination with the Equal Employment Opportunity Commission, the

California Department of Fair Employment and Housing, the New York Human Rights Commission or any similar fair employment practices agency) in any way related to or arising from any Claim covered by this Program.

In addition to administrative charges of discrimination as set forth above, the DRP also excluded certain other types of claims from mandatory arbitration as follows:

> This Program does not apply to or cover claims for workers' compensation benefits; claims for unemployment compensation benefits; claims by the Firm for injunctive relief and/or other equitable relief for violations of the attorney-client privilege or work product doctrine or the disclosure of other confidential information; or claims based upon an employee pension or benefit plan, the terms of which contain an arbitration or other nonjudicial dispute resolution procedure, in which case the provisions of that plan shall apply.

It is undisputed that Davis's FLSA and related claims regarding overtime "arise out of," or "relate to," her employment for purposes of the scope of the DRP. The question here is whether the DRP is enforceable, in whole or in part.

Two other specific provisions of the DRP are also at issue in this appeal: (1) a "notice provision" requiring notice and a demand for mediation within one year from when the basis of the claim is known or should have been known; and (2) a confidentiality clause.

The notice provision provides as follows:

> An employee must give written notice of any Claim to the Firm along with a demand for mediation. This notice must be given within one (1) calen-

dar year from the time the condition or situation providing the basis for the Claim is known to the employee or with reasonable effort on the employee's part should have been known to him or her. The same rule applies to any Claim the Firm has against an employee . . . . **Failure to give timely notice of a Claim along with a demand for mediation will waive the Claim and it will be lost forever.** (Bold and underscore in original.)

The confidentiality clause provides as follows:

Except as may be necessary to enter judgment upon the award or to the extent required by applicable law, all claims, defenses and proceedings (including, without limiting the generality of the foregoing, the existence of a controversy and the fact that there is a mediation or an arbitration proceeding) shall be treated in a confidential manner by the mediator, the Arbitrator, the parties and their counsel, each of their agents, and employees and all others acting on behalf of or in concert with them. Without limiting the generality of the foregoing, no one shall divulge to any third party or person not directly involved in the mediation or arbitration the content of the pleadings, papers, orders, hearings, trials, or awards in the arbitration, except as may be necessary to enter judgment upon the Arbitrator's award as required by applicable law.

After Davis filed suit, O'Melveny moved to dismiss the action and to compel arbitration. The district court upheld the DRP and granted O'Melveny's motion. Davis filed a timely appeal.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over this appeal under 9 U.S.C. § 16(a)(3). A district court's order compelling arbitration is

reviewed de novo. *Circuit City Stores, Inc. v. Mantor*, 417 F.3d 1060, 1063 (9th Cir. 2005) (*Mantor II*) (citation omitted).

Neither party questioned whether a court — as opposed to an arbitrator — should decide whether the DRP is unconscionable. The Ninth Circuit, sitting en banc and applying *Buckeye Check Cashing, Inc., v. Cardegna*, 546 U.S. 440, 126 S. Ct. 1204 (2006), recently addressed whether challenges to an arbitration clause or agreement should be decided by a court or an arbitrator. *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006) (en banc). "When the crux of the complaint is not the invalidity of the contract as a whole, but rather the arbitration provision itself, then the federal courts [as opposed to the arbitrator] must decide whether the arbitration provision is invalid and unenforceable under 9 U.S.C. § 2[.]" *Id.* at 1264. The arbitration agreement challenged in this case is only part of the many conditions and terms of Davis's employment relationship with O'Melveny. Striking or upholding the arbitration agreement or severing any of its terms would not otherwise affect the legality of other conditions of her employment. Under *Nagrampa*, then, the question whether O'Melveny's arbitration agreement is unconscionable is for a court to decide. *See id.*; *cf. Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 264-65 (3d Cir. 2003) (exemplifying that a court addresses the unconscionability of an arbitration provision in a suit regarding employment disputes), *cited with approval in Nagrampa*, 469 F.3d at 1271-72.

## DISCUSSION

**[1]** Under the Federal Arbitration Act (FAA), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Federal policy favors arbitration. *Gilmer v. Interstate/Johnson Lane Co.*, 500 U.S. 20, 25 (1991) (reasoning that the FAA "manifest[s] a 'liberal federal policy favoring arbitration agreements.' ") (quoting

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Generally, "arbitration affects only the choice of forum, not substantive rights." *EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 750 (9th Cir. 2003) (en banc). Of course, arbitration agreements are not always valid. Rather, in assessing whether an arbitration agreement or clause is enforceable, the Court "should apply ordinary state-law principles that govern the formation of contracts." *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

[2] Under California law, a contractual clause is unenforceable if it is both procedurally and substantively unconscionable. *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000); *Nagrampa*, 469 F.3d at 1280. Courts apply a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 6 P.3d at 690. Still, "both [must] be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Id.* (quoting *Stirlen v. Supercuts, Inc.*, 60 Cal. Rptr. 2d 138, 145 (Cal. Ct. App. 1997)). We address each prong in turn.

### 1. *Procedural Unconscionability*

In assessing procedural unconscionability, the court "focuses on whether the contract was one of adhesion. Was it 'imposed on employees as a condition of employment'? Was there 'an opportunity to negotiate'? . . . '[The test] focuses on factors of oppression and surprise.' " *Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1042 (9th Cir. 2001) (citations omitted).

[3] The DRP was written by a sophisticated employer — a national and international law firm, no less — but there are no

factors of adhesion such as surprise or concealment. The DRP was not hidden.[2] The terms were not concealed in an employee handbook. The binding nature of it was in bold and uppercase text. Terms were not buried in fine print. O'Melveny not only gave ample notice of the program and its terms, but also made efforts to have employment lawyers and human-resource personnel available to answer questions. There is no evidence (although the case did not progress very far) of undue pressure put on employees.

**[4]** Nevertheless, in a very real sense the DRP was "take it or leave it." The DRP's terms took effect three months after they were announced regardless of whether an employee liked them or not. An employee's option was to leave and work somewhere else. True, for current employees like Davis, three months might have been sufficient time to consider whether the DRP was reason to leave O'Melveny. In that sense, there could have been a meaningful opportunity to "opt out" — although to opt out of the entire employment relationship, not to retain the relationship but preserve a judicial forum.

In *Adams*, the Ninth Circuit, applying *Armendariz* (the controlling California Supreme Court case), found an arbitration agreement procedurally unconscionable because it was a "take it or leave it" proposition. 279 F.3d at 893. *Adams* reasoned that "[t]he agreement is a prerequisite to employment, and job applicants are not permitted to modify the agreement's terms — they must take the contract or leave it." *Id.* The Ninth Circuit found an agreement in *Ferguson v. Countrywide Credit Industries, Inc.*, 298 F.3d 778, 783 (9th Cir. 2002), procedurally unconscionable for the same reason. California courts continue to apply the rationale from *Armendariz* to find such arbitration contracts procedurally unconscionable. *See, e.g., Martinez v. Master Prot. Corp.*, 12 Cal. Rptr.

---

[2]Whether the employees understood the terms and whether specific provisions "shock the conscience" — and in that sense would "surprise" an employee — are different questions, analyzed under the substantive prong.

3d 663, 669 (Cal. Ct. App. 2004) ("An arbitration agreement that is an essential part of a 'take it or leave it' employment condition, without more, is procedurally unconscionable.") (citations omitted).

Conversely, if an employee has a meaningful opportunity to opt out of the arbitration provision when signing the agreement and still preserve his or her job, then it is not procedurally unconscionable. *See, e.g.*, *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) (upholding agreement); *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002) (same). *Compare Mantor I*, 335 F.3d at 1106-07 (finding procedural unconscionability even if employee had been given an "opt out" form, because of undue pressure not to sign the "opt out" form, rendering the opportunity not meaningful).

O'Melveny concedes that its employees were not given an option to "opt out" and preserve a judicial forum. (It does note that employees were invited to ask questions about the DRP, but there is nothing to indicate that the terms were negotiable for employees such as Davis.) But, O'Melveny argues — and the district court agreed — that the three months of notice nevertheless satisfies the concern of oppression behind this factor. It relies on a "marketplace alternatives" theory used in cases outside the employment context. *See Dean Witter Reynolds, Inc. v. Superior Court*, 259 Cal. Rptr. 789 (Cal. Ct. App. 1989). In this regard, *Dean Witter* stated:

> any claim of 'oppression' may be defeated if the complaining party had reasonably available alternative sources of supply from which to obtain the desired goods or services free of the terms claimed to be unconscionable. If 'oppression' refers to the 'absence of meaningful choice,' then the existence of a 'meaningful choice' to do business elsewhere must tend to defeat any claim of oppression.

*Id.* at 795.

*Dean Witter* addressed mandatory arbitration in a financial services contract. The court reasoned that if the consumer did not like the mandatory arbitration provision in an investment account contract, the consumer could get an account at another company. *Id.* at 798. The district court here accepted O'Melveny's argument extending *Dean Witter* by analogy to the employment context. The rationale is that if Davis did not want to work at O'Melveny (which was free to change most of the terms of her employment with reasonable notice) she had a "meaningful choice" — as in *Dean Witter* — to "do business elsewhere" by working somewhere else.

**[5]** It is impossible, however, to square such reasoning with explicit language from *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1172 (9th Cir. 2003) (*Ingle I*) and *Ferguson*, 298 F.3d at 784, specifically rejecting the argument that a "take it or leave it" arbitration provision was procedurally saved by providing employees time to consider the change. In *Ingle I,*, the Ninth Circuit struck a Circuit City arbitration agreement as both procedurally and substantively unconscionable. 328 F.3d at 1172-73. As with O'Melveny's DRP, the employee Ingle did not have an opportunity to opt out by preserving a judicial forum. *Id.* at 1172. Circuit City argued that the agreement was enforceable because Ingle had time to consider the arbitration terms, but chose to accept the employment anyway. The *Ingle I* court rejected Circuit City's argument.

**[6]** O'Melveny attempts to distinguish *Ingle I* in this regard because Davis had three *months* — not three days — to consider the arbitration agreement. The distinction, however, is not helpful because even if the opportunity to walk away was "meaningful," the DRP was still a "take it or leave it" proposition. More importantly, *Ingle I* reasoned that '[t]he amount of time [the employee] had to consider the contract is *irrelevant*." *Id.* (emphasis added). *Ingle I* addressed the availability of alternative employment by "follow[ing] the reasoning in

*Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 118 Cal. Rptr. 2d 862 (2002), in which the California Court of Appeal held that *the availability of other options does not bear on whether a contract is procedurally unconscionable.*" *Ingle I*, 328 F.3d at 1172 (citing *Szetela*, 118 Cal. Rptr. 2d at 867) (emphasis added); *see also Ferguson*, 298 F.3d at 784 ("[W]hether the plaintiff had an opportunity to decline the defendant's contract and instead enter into a contract with another party that does not include the offending terms *is not the relevant test for procedural unconscionability.*") (emphasis added) (citing *Szetela*, 118 Cal. Rptr. 2d at 867); *Fitz v. NCR Corp.*, 13 Cal. Rptr. 3d 88, 102 (Cal. Ct. App. 2004) (finding arbitration contract procedurally unconscionable because employee did not have a meaningful choice to reject a new arbitration agreement imposed with one month's notice: "Few employees are in a position to forfeit a job and the benefits they have accrued for more than a decade solely to avoid the arbitration terms that are forced upon them by their employer.").

**[7]** In *Nagrampa*, the Ninth Circuit reiterated these principles of California law and specifically rejected the argument that the availability of other employment can defeat a claim of procedural unconscionability when an employee is faced with a "take it or leave it" condition of employment. *Nagrampa*, 469 F.3d at 1283 ("The California Court of Appeal has rejected the notion that the availability in the marketplace of substitute employment, goods, or services *alone* can defeat a claim of procedural unconscionability.") (emphasis in original) (citations omitted). *Nagrampa* also distinguished *Dean Witter* by reasoning that the investor in that case was a sophisticated investor-attorney with specialized knowledge of financial institutions and financial service contracts. *Id.* In contrast, where — as is the case with Davis as a paralegal in an international law firm — the employee is facing an employer with "overwhelming bargaining power" that "drafted the contract, and presented it to [Davis] on a take-it-or-leave-it basis," the clause is procedurally uncon-

scionable. *Id.* at 1284; *see also Morris v. Redwood Empire Bancorp*, 27 Cal. Rptr. 3d 797, 807 (Cal. Ct. App. 2005) (distinguishing *Dean Witter* and reasoning that "not every opportunity to seek an alternative source of supply is 'realistic.' Courts have recognized a variety of situations where adhesion contracts are oppressive, despite the availability of alternatives. For example, . . . few employees are in a position to refuse a job because of an arbitration agreement in an employment contract.") (citations and internal quotation marks omitted); *Jones v. Humanscale Corp.*, 29 Cal. Rptr. 3d 881, 892 (Cal. Ct. App. 2005) ("Defendant prepared and submitted the agreement containing the arbitration clause to plaintiff and required him to sign it as a condition of his continued employment, thus rendering the agreement a contract of adhesion.") (citations omitted).

**[8]** In short, the DRP is procedurally unconscionable.

## 2. *Substantive Unconscionability*

Even if the DRP is procedurally unconscionable, we must also address whether the agreement is (or specific provisions of it are) substantively unconscionable before rendering it (or any of its terms) unenforceable. *Armendariz*, 6 P.3d at 690; *Nagrampa*, 469 F.3d at 1280-81 (reiterating that procedural unconscionability is to be analyzed in proportion to evidence of substantive unconscionability).

**[9]** "Substantive unconscionability relates to the effect of the contract or provision. A 'lack of mutuality' is relevant in analyzing this prong. The term focuses on the terms of the agreement and whether those terms are so one-sided as to *shock the conscience*." *Soltani*, 258 F.3d at 1043 (internal quotation marks and citations omitted) (emphasis in original). "A determination of substantive unconscionability . . . involves whether the terms of the contract are unduly harsh or oppressive." *Adams*, 279 F.3d at 893 (citation omitted).

We proceed to examine individually the four provisions of the DRP that Davis challenges as substantively unconscionable or otherwise void. We then consider whether the provisions we conclude are void may be severed from the rest of the DRP or whether, instead, the DRP is unenforceable in its entirety.

### a. The "Notice Provision."

Davis challenges the DRP's notice provision. It allows one year within which to give notice from when any claim is "known to the employee or with reasonable effort . . . should have been known to him or her." Davis contends that this notice provision is a substantively-unconscionable shortened statute of limitations and that it deprives her of potential application of a "continuing violation" theory.

[10] The challenged provision covers more than merely "notice"; it also requires a demand for mediation within a year ("**Failure to give timely notice of a Claim along with a demand for mediation will waive the Claim and it will be lost forever**") (bold and underscore in original). Under the DRP, then, mediation is a mandatory prerequisite to arbitration.[3] The one-year notice provision thus functions as a statute of limitations. Because mediation precedes the arbitration, the "notice provision" requires the whole claim to be filed within a year. One cannot, for example, give written "notice" within a year, but otherwise file a claim later under a longer statute of limitations.[4] In short, if the claim is not filed within a year of when it should have been discovered, it is lost.

---

[3]The DRP actually contemplates two other prior steps, although they are not mandatory: (1) "Open Door" which is an optional meeting with a supervisor and should be presented within 30 days of when the claim is known, and (2) "Human Resources Department" which is a formal claim made with the human resources department and contemplates an investigation and written response.

[4]For example, there is a three-year limitation period for a willful FLSA violation, and two years otherwise. 29 U.S.C. § 255(a).

**[11]** We have previously held that forcing employees to comply with a strict one-year limitation period for employment-related statutory claims is oppressive in a mandatory arbitration context. O'Melveny's "notice" provision is similar to the limitations provision in *Ingle I*, which read:

> [a claim] shall be submitted not later than one year after the date on which the [Employee] knew, or through reasonable diligence should have known, of the facts giving rise to the [Employee's] claim(s). The failure of an [Employee] to initiate an arbitration within the one-year time limit shall constitute a waiver with respect to that dispute relative to that [Employee].

328 F.3d at 1175. We struck down that provision as substantively unconscionable. *Id.*; *see also Mantor I*, 335 F.3d at 1107 (adopting *Ingle I*'s statute-of-limitations holding). Likewise, in *Adams* we invalidated "a strict one year statute of limitation" against bringing employment-related statutory claims as substantively unconscionable. 279 F.3d at 894. California courts have also struck arbitration provisions because of a shortened limitations period. *See Martinez*, 12 Cal. Rptr. 3d at 671-72 (finding an arbitration agreement with a six-month limitation period substantively unconscionable because the shortened period is "insufficient to protect its employees' right to vindicate their statutory rights"). The fact that O'Melveny is also bound to litigate employment-related statutory claims within the one-year period is of no consequence, as these are types of claims likely only to be brought by employees. *See Ingle I*, 328 F.3d at 1173-74 ("The only claims realistically affected by an arbitration agreement between an employer and an employee are those claims employees bring against their employer."); *Martinez*, 12 Cal. Rptr. 3d at 670.

In holding substantively unconscionable provisions shortening the time to bring employment-related statutory claims,

we have been particularly concerned about barring a "continuing violations" theory by employees. Such a theory can be used, for example, when an employer has a "systematic policy of discrimination" consisting of related acts that began prior to period within the statute of limitations. *See, e.g.*, *Richards v. CH2M Hill, Inc.*, 29 P.3d 175, 183 (Cal. 2001) (discussing various continuing violation theories). On this point, *Ingle I* reasoned:

> [A] 'strict one year statute of limitations on arbitrating claims . . . would deprive [employees] of the benefit of the continuing violation doctrine available in FEHA suits.' . . . . While [the employer] insulates itself from potential damages, an employee foregoes the possibility of relief under the continuing violations doctrine. Therefore, because the benefit of this provision flows only to [the employer], we conclude that the statute of limitations provision is substantively unconscionable.

328 F.3d at 1175 (quoting *Adams*, 279 F.3d at 894-95) (citation omitted). Likewise, the provision imposed by O'Melveny functions to bar a "continuing violations" theory because it specifically bars any claims not brought within a year of when they were first known (or should have been known). Absent equitable tolling (and it is uncertain whether an arbitrator would allow tolling), such "continuing violations" would be barred by the DRP, because neither notice nor a demand for mediation would have been filed within a year of "the time the condition or situation providing the basis for the Claim is known to the employee or with reasonable effort on the employee's part should have been known to him or her."

O'Melveny relies on *Soltani*, in which the Ninth Circuit expressly found a shortened six-month limitation provision *not* substantively unconscionable under California law. 258 F.3d at 1044-45. *Soltani* cited a host of California cases and authority from other jurisdictions finding that, as a general

matter, a shortened six-month limitation period is not unreasonable. O'Melveny argues that if six-months is reasonable, then the year given in the DRP must also be reasonable (and thus not substantively unconscionable). *Soltani*, however, is distinguishable.

*Soltani* addressed a different type of limitations provision. There, the employment contract required any suit relating to employment to be filed within six-months after the employee left the employer. *Id.* at 1041. The time to file did not depend upon when the employee knew of the claim, or otherwise when it arose. A three-year-old claim could still be filed, as long as it was also filed within six-months from when the employee stopped working (and as long as it was not otherwise barred by the relevant statute of limitations). This type of provision does not raise the concerns about nullifying the "continuing violations" theory, as the employee would during that six-month period still be able to take full advantage of the ability to reach back to the start of the violation.

**[12]** Under *Ingle I*, *Adams*, and *Mantor I* (and the subsequent California appeals court decision in *Martinez*), the DRP's one-year universal limitation period is substantively unconscionable when it forces an employee to arbitrate employment-related statutory claims.

### b. Confidentiality Provision.

Next, Davis challenges the confidentiality provision. She argues that it is overly broad and therefore substantively unconscionable under *Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003).

In *Ting*, the Ninth Circuit found a confidentiality clause in an arbitration agreement substantively unconscionable, reasoning as follows.

> [C]onfidentiality provisions usually favor companies over individuals. In *Cole [v. Burns Int'l Sec. Servs.]*,

105 F.3d 1465 [(D.C. Cir. 1997)], the D.C. Circuit recognized that because companies continually arbitrate the same claims, the arbitration process tends to favor the company. *Id.* at 1476. Yet because of plaintiffs' lawyers and arbitration appointing agencies like the [American Arbitration Association], who can scrutinize arbitration awards and accumulate a body of knowledge on a particular company, the court discounted the likelihood of any harm occurring from the "repeat player" effect. We conclude, however, that if the company succeeds in imposing a gag order, plaintiffs are unable to mitigate the advantages inherent in being a repeat player. This is particularly harmful here, because the contract at issue affects seven million Californians.

*Ting*, 319 F.3d at 1151-52.

True, Davis's suit does not allege the kind of repeatable claim that could be made by millions of potential claimants as in *Ting*, but O'Melveny does have hundreds if not thousands of employees who conceivably could bring claims. In any event, *Ting*'s concern was not limited strictly to potential claims by millions of "repeat players." Rather, the logic of *Ting* in this regard is that even facially mutual confidentiality provisions can effectively lack mutuality and therefore be unconscionable. The opinion goes on to reason

Thus, [the employer] has placed itself in a far superior legal posture by ensuring that none of its potential opponents have access to precedent while, at the same time, [the employer] accumulates a wealth of knowledge on how to negotiate the terms of its own unilaterally crafted contract. Further, the unavailability of arbitral decisions may prevent potential plaintiffs from obtaining the information needed to build a case of intentional misconduct or unlawful discrimination against [the employer].

*Id.* at 1152.

**[13]** Here, the DRP's confidentiality clause as written unconscionably favors O'Melveny. The clause precludes even mention to anyone "not directly involved in the mediation or arbitration" of "the content of the pleadings, papers, orders, hearings, trials, or awards in the arbitration" or even "the existence of a controversy and the fact that there is a mediation or an arbitration proceeding." Such restrictions would prevent an employee from contacting other employees to assist in litigating (or arbitrating) an employee's case. An inability to mention even the existence of a claim to current or former O'Melveny employees would handicap if not stifle an employee's ability to investigate and engage in discovery. The restrictions would also place O'Melveny "in a far superior legal posture" by preventing plaintiffs from accessing precedent while allowing O'Melveny to learn how to negotiate and litigate its contracts in the future. *Id.* Strict confidentiality of all "pleadings, papers, orders, hearings, trials, or awards in the arbitration" could also prevent others from building cases. *See id.* ("the unavailability of arbitral decisions may prevent potential plaintiffs from obtaining the information needed to build a case of intentional misconduct or unlawful discrimination"). It might even chill enforcement of Cal. Labor Code § 232.5, which forbids employers from keeping employees from disclosing certain "working conditions" and from retaliating against employees who do so.[5]

---

[5]The section provides in part:

**§ 232.5. Working conditions; prohibition of sanctions against employee disclosure**

No employer may do any of the following:

(a)   Require, as a condition of employment, that an employee refrain from disclosing information about the employer's working conditions.

(b)   Require an employee to sign a waiver or other document that purports to deny the employee the right to disclose information about the employer's working conditions.

O'Melveny responds by arguing that the DRP allows parties to divulge information to those "directly involved" and would therefore allow fact investigation. O'Melveny also indicates that, despite the language, the confidentiality clause would not otherwise bar depositions and discovery in a confidential setting. It also relies upon a "savings clause" at the beginning of the provision ("Except as may be necessary to enter judgment upon the award or to the extent required by applicable law") as indicating that if there's something wrong with any of the confidentiality clause's terms, then the improper provision would be subordinated "to the extent required by applicable law" — i.e., ignored.

But such concessions depend upon overly generous readings of the confidentiality clause. We must deal with the terms as written. *See Armendariz*, 6 P.3d at 697 ("[an employer's concession] does not change the fact that the arbitration agreement as written is unconscionable and contrary to public policy. . . . No existing rule of contract law permits a party to resuscitate a legally defective contract merely by offering to change it.") (citation and internal quotation marks omitted). As written, the terms are too broad and implicate *Ting*'s concerns.

**[14]** This does not mean that confidentiality provisions in an arbitration agreement are per se unconscionable under California law. *See Mercuro v. Superior Court*, 116 Cal. Rptr. 2d 671, 679 (Cal. Ct. App. 2002) ("While [the California] Supreme Court has taken notice of the 'repeat player effect,' the court has never declared this factor renders the arbitration agreement unconscionable per se.") (citations omitted). The concern is not with confidentiality itself but, rather, with the scope of the language of the DRP. *Cf. Zuver v. Airtouch*

---

(c) Discharge, formally discipline, or otherwise discriminate against an employee who discloses information about the employer's working conditions.

*Commc'ns, Inc.*, 103 P.3d 753, 765 (Wash. 2004) (En Banc) ("[A]lthough courts have accepted confidentiality provisions in many agreements, it does not necessarily follow that *this* confidentiality provision is conscionable.") (emphasis in original).[6] The parties to any particular arbitration, especially in an employment dispute, can always agree to limit availability of sensitive employee information (e.g., social security numbers or other personal identifier information) or other issue-specific matters, if necessary. Confidentiality by itself is not substantively unconscionable; the DRP's confidentiality clause, however, is written too broadly.

### c. O'Melveny's Exemption for Attorney-client Privilege Disputes.

Davis also challenges the DRP's non-mutual provision exempting O'Melveny from arbitration for "claims by the Firm for injunctive and/or other equitable relief for violations of the attorney-client privilege or work product doctrine or the disclosure of other confidential information."

**[15]** California law allows an employer to preserve a judicial remedy for itself if justified based upon a "legitimate commercial need" or "business reality." *Armendariz*, 6 P.3d at 691 ("[A] contract can provide a 'margin of safety' that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable") (quoting *Stirlen*, 60 Cal. Rptr. 2d at 148); *see also Fitz*, 13 Cal. Rptr. 3d at 103 ("a contracting party with superior bargaining strength may provide 'extra protection' for itself within the terms of the arbitration agreement if 'business realities' create a special need for the advantage. The 'business realities' creating the special need, must be explained in the terms of the contract or factually established.") (citing *Armendariz*, 6 P.3d at 769-70).

---

[6]California and Washington law incorporate similar principles in analyzing the unconscionability of arbitration agreements. *See Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254, 1261 & n.6 (9th Cir. 2005).

O'Melveny justifies this clause by pointing out that it has not only contractual but ethical obligations to clients to protect against violations of the attorney-client privilege and work-product doctrine and otherwise to protect confidential client information. *See, e.g.*, Cal. Bus. & Prof. Code § 6068(e) ("It is the duty of an attorney to . . . maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, or his or her client."); *In re Jordan*, 500 P.2d 873, 878-79 (Cal. 1972). Situations are foreseeable where O'Melveny might need a quick court order or injunction to prohibit a current or former employee from releasing privileged information. Where many employees of a law firm might have access to privileged information, a narrow exception to arbitration for judicially-mandated injunctive relief to protect against violations of the attorney-client privilege or work product doctrine or the disclosure of other such confidential information could constitute a legitimate "business reality."

Initially, California law provides that certain "public injunctions" are incompatible with arbitration (and that such a holding is consistent with the FAA). Actions seeking such injunctions cannot be subject to arbitration even under a valid arbitration clause. *See Broughton v. Cigna Healthplans of Cal.*, 988 P.2d 67, 76-80 (Cal. 1999) (holding that a claim for public injunctive relief under the CLRA is not arbitrable, although damage claims under the CLRA are arbitrable); *Cruz v. PacifiCare Health Sys., Inc.*, 66 P.3d 1157, 1164-65 (Cal. 2003) (extending *Broughton* to claims for public injunctive relief under California's unfair competition law, Business and Professions Code § 17200 et seq.); *Zavala v. Scott Brothers Dairy, Inc.*, 49 Cal. Rptr. 3d 503, 510 (Cal. Ct. App. 2006) ("Certainly, plaintiffs' injunctive relief claim under the unfair business practices act (Bus. & Prof. Code, § 17200) is not arbitrable.").

**[16]** Protections against violations of the attorney client privilege and work-product doctrine are primarily for the ben-

efit of clients, and in that sense are "in the public interest." *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (observing that the purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice"); *see also In re Jordan*, 500 P.2d at 879 ("[P]rotection of [client] confidences and secrets is not a rule of mere professional conduct, but instead involves public policies of paramount importance which are reflected in numerous statutes.").

**[17]** But, as recently explained in *Nagrampa*, California law also indicates that protecting against breaches of confidentiality alone does not constitute a sufficient justification. In *Nagrampa*, the en banc court rejected a clause that allowed a franchisor to file a lawsuit seeking injunctive relief to protect proprietary information. 469 F.3d at 1286. *Nagrampa* relied upon *O'Hare v. Municipal Resource Consultants*, 132 Cal. Rptr. 2d 116 (Cal. Ct. App. 2003), which "rejected the employer's contention that it had a legitimate business justification in the 'highly confidential and proprietary nature' of its auditing and consulting work for allowing it, but not the employee, to seek injunctive relief in court." 469 F.3d at 1286 (citing *O'Hare*, 132 Cal. Rptr. 2d at 124). Rather, "to constitute a reasonable business justification, the justification must be something other that the employer's desire to maximize its advantage based upon the perceived superiority of the judicial forum." *Id.* (citations and internal quotation marks omitted). *Nagrampa* explained that "California courts routinely have rejected [protecting proprietary information] as a legitimate basis for allowing only one party to an agreement access to the courts for provisional relief." *Id.* at 1287 (citations omitted).

**[18]** It may be that a provision allowing a law firm immediate access to a court for a limited purpose of seeking injunctive relief to protect confidential attorney-client information could constitute a legitimate business justification because

such relief would fit into an unarbitrable category of "public injunction" — a proposition of California state law which, as far as this panel can determine, has not been addressed in a published California opinion and which we need not decide here.[7] Even assuming such an injunction were not arbitrable, however, the DRP's provisions are not so limited. Here, the DRP also allows O'Melveny to seek "other equitable relief" for *not only* violations of the attorney-client privilege or work product doctrine, but also for "the disclosure of other confidential information." That is, even accepting O'Melveny's proffered justification, the DRP's clause is still too broad. Its plain language would allow O'Melveny to go to court to obtain any "equitable relief" for the disclosure of any "confidential information." As written, then, the DRP's non-mutual exception allowing it a judicial remedy to protect confidential information, as written, is "one-sided and thus substantively unconscionable." *Nagrampa*, 469 F.3d at 1287.

### 3.  *Availability of Statutory Rights*

Davis challenges as void against public policy the DRP's prohibition against most administrative actions. The challenged clause states:

> neither you nor the Firm will initiate or pursue any lawsuit *or administrative action* (other than filing an administrative charge of discrimination with the Equal Employment Opportunity Commission, the California Department of Fair Employment and

---

[7]To the extent such a "public injunction" would be exempt from arbitration, it might be allowable in a lawsuit under Cal Civ. Proc. Code § 1281.8(b), without the need to exclude it from an arbitration agreement. Section 1281.8(b) provides:

> A party to an arbitration agreement may file in . . . court . . . an application for a provisional remedy in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief.

> Housing, the New York Human Rights Commission
> or any similar fair employment practices agency) in
> any way related to or arising from any Claim cov-
> ered by this Program. (Emphasis added.)

Arbitration is favored as a matter of policy regardless of whether it is in lieu of a judicial or administrative forum. *See Gilmer*, 500 U.S. at 28-29 (noting securities law claims can be arbitrated even though the SEC is involved in the enforcement of those laws); *Southland Corp. v. Keating*, 465 U.S. 1, 13 (1984) ("[T]he purpose of the [FAA] was to assure those who desired arbitration and whose contracts related to interstate commerce that their expectations would not be undermined by federal judges, or . . . by state courts or legislatures.") (quoting *Metro Indus. Painting Corp. v. Terminal Constr. Corp.*, 287 F.2d 382, 387 (2d Cir. 1961) (Lumbard, C.J., concurring) (omission in original)). "Assuming an adequate arbitral forum . . . 'by agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.' " *Armendariz*, 6 P.3d at 679 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)) (square brackets omitted).

Nevertheless, an arbitration agreement may not function so as to require employees to waive potential recovery for substantive statutory rights in an arbitral forum, especially for statutory rights established "for a public reason" — such as those under The Age Discrimination in Employment Act (ADEA) and the California Fair Employment and Housing Act (FEHA). *Gilmer*, 500 U.S. at 28; *Armendariz*, 6 P.3d at 680-81. That is, although such rights are arbitrable, an arbitration forum must allow for the pursuit of the legal rights and remedies provided by such statutes. *Armendariz*, 6 P.3d at 681 (citing *Cole*, 105 F.3d at 1481-82). In this context, employment rights under the FLSA and California's Labor Code are "public rights" analogous to rights under the ADEA and

FEHA. *See, e.g.*, *Albertson's, Inc. v. United Food & Commercial Workers Union*, 157 F.3d 758, 761 (9th Cir. 1998).

As explained earlier, California law provides that certain "public injunctions" are incompatible with arbitration. *See Broughton*, 988 P.2d at 76-80 (holding that a claim for public injunctive relief under California's Consumer Legal Remedies Act (CLRA) is not arbitrable, although damages claims under the CLRA are arbitrable); *Cruz*, 66 P.3d at 1164-65 (extending *Broughton* to claims for public injunctive relief under California's unfair competition law, Business and Professions Code § 17200 et seq.); *Zavala*, 49 Cal. Rptr. 3d at 510. It follows that the DRP may not prohibit — i.e., require arbitration of — judicial actions seeking such public injunctive relief. Here, at least two counts of Davis's complaint seek, among other things, such public injunctive relief under California's Labor Code and Unfair Business Practices Act. To that extent, at minimum, the DRP is unenforceable.

**[19]** More importantly, however, the DRP's all-inclusive bar to administrative actions (even given the listed exceptions for EEOC and California Department of Fair Housing ("DFEH") complaints) is contrary to U.S. Supreme Court and California Supreme Court precedent. O'Melveny recognizes that an exemption for EEOC and similar state-level administrative claims is necessary. *See Gilmer*, 500 U.S. at 28 ("An individual ADEA claimant subject to an arbitration agreement will still be free to file a charge with the EEOC, even though the claimant is not able to institute a private judicial action."); *Armendariz*, 6 P.3d at 679 n.6 ("Nothing in this opinion, however, should be interpreted as implying that an arbitration agreement can restrict an employee's resort to the Department of Fair Employment and Housing, the administrative agency charged with prosecuting complaints made under the FEHA. . . .") (citing *Gilmer*, 500 U.S. at 28). Presumably, the DRP specifically excludes such administrative complaints because of these cases. O'Melveny also acknowledges that the clause does not bar the EEOC or a similar state agency from seeking

relief (in court) that is not individual-specific, such as a class action. The clause also could not bar an EEOC-instituted judicial action that might also seek victim-specific relief. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 295-96 (2002). Therefore, under *Gilmer* and *Armendariz*, a clause that barred or required arbitration of administrative claims to the EEOC would be void as against public policy.

The exception (i.e., preclusion from arbitration) for administrative complaints to the EEOC and California DFEH was premised on the agencies' public purpose for the relief and their independent authority to vindicate public rights. *Gilmer*, 500 U.S. at 27; *Waffle House*, 534 U.S. at 291-92, 294-96. Indeed, the EEOC's enforcement scheme relies upon individual complaints. "Consequently, courts have observed that an individual may not contract away her right to file a charge with the EEOC[.]" *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 456 (6th Cir. 1999) (citations omitted); *cf. Waffle House*, 534 U.S. at 296 n.11 ("We have generally been reluctant to approve rules that may jeopardize the EEOC's ability to investigate and select cases from a broad sample of claims.").

So it is with the Department of Labor and FLSA complaints — such complaints may not be waived with an arbitration clause because the statutory scheme is premised on an employee's willingness to come forward, in support of the public good. *See Mitchell v. Robert De Mario Jewelry, Inc.*, 361 U.S. 288, 292 (1960) ("Congress did not seek to secure compliance with prescribed standards [under the FLSA] through continuing detailed federal supervision or inspection of payrolls. Rather it chose to rely on information and complaints received from employees seeking to vindicate rights claimed to have been denied. Plainly, effective enforcement could thus only be expected if employees felt free to approach officials with their grievances."); *Lambert v. Ackerley*, 180 F.3d 997, 1003-04 (9th Cir. 1999) (en banc) (explaining the importance of the FLSA's scheme of individual complaints by

employees); *Painting & Drywall Work Pres. Fund, Inc. v. Dep't of Hous. & Urban Dev.*, 936 F.2d 1300, 1301 (D.C. Cir. 1991) ("Both the Department of Labor and the Department of Housing and Urban Development . . . enforce compliance with these [wage] laws. In doing so, they often rely on complaints from workers and unions.").

**[20]** Even if the DRP does not preclude the Department of Labor or California Labor Commissioner from instituting independent actions, the DRP precludes any individual complaint or notification by an employee to such agencies. By not allowing employees to file or to initiate such administrative charges, the DRP is contrary to the same public policies relied upon in *Gilmer* and *Armendariz*. It follows that the same exception should apply. Therefore, the DRP's prohibition of administrative claims is void.

### 4. *Severability*

That the arbitration agreement contains these flawed provisions does not necessarily mean that the entire DRP is substantively unconscionable. Rather, it might be possible to sever the one-year limitations provision (even though the DRP itself does not have a severability clause). *See* Cal. Civ. Code § 1670.5(a) ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."). The question is whether the offending clause or clauses are merely "collateral" to the main purpose of the arbitration agreement, or whether the DRP is "permeated" by unconscionability. *Armendariz*, 6 P.3d at 696.

Most of the terms in the DRP are expressly mutual. Unlike the agreements struck down in *Ingle I* and *Adams*, O'Melveny's DRP applies almost equally to claims both by

and against O'Melveny. The DRP requires arbitration of claims "that the Firm may have against you or that you may have against the Firm." Under the DRP's terms, arbitration is required not only for claims by an employee (claims such as failure to pay overtime), but also for claims an employer might bring against an employee (such as theft, embezzlement, gross negligence, or destruction of property).

**[21]** Nevertheless, the DRP is procedurally unconscionable and contains *four* substantively unconscionable or void terms: (1) the "notice" provision, (2) the overly-broad confidentiality provision, (3) an overly-broad "business justification" provision, and (4) the limitation on initiation of administrative actions. These provisions cannot be stricken or excised without gutting the agreement. Despite a "liberal federal policy favoring arbitration agreements," *Moses H. Cone Memorial Hospital*, 460 U.S. at 24, a court cannot rewrite the arbitration agreement for the parties. Given the scope of procedural and substantive unconscionability, the DRP is unenforceable. *Armendariz*, 6 P.3d at 697 ("multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage. . . . Because a court is unable to cure this unconscionability through severance or restriction, and is not permitted to cure it through reformation and augmentation, it must void the entire agreement.").

## CONCLUSION

**[22]** The arbitration agreement is unconscionable under California law. We reverse and remand for proceedings not inconsistent with this opinion.